Bay Ridge Operating Co., Inc. v. Commissioner.
Bay Ridge Operating Co. v. Commissioner
Docket No. 5353-67.
United States Tax Court
T.C. Memo 1970-19; 1970 Tax Ct. Memo LEXIS 339; 29 T.C.M. (CCH) 58; T.C.M. (RIA) 70019; January 28, 1970, Filed. William F. Fallon, 120 Broadway, New York, N. Y., for the petitioner. Agatha L. Vorsanger, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's income tax as follows: Taxable Year Ending
Deficiencies
April 30, 1960
$41,351.88
April 30, 1962
36,862.50
April 30, 1963
18,950.16
*340 Certain issues have been resolved by the parties. The only issue for decision is whether that part of a dividend, declared by petitioner's wholly-owned subsidiary on March 22, 1962, not actually paid to petitioner until June 27, 1962, is includable in its gross income for the taxable year ending April 30, 1962, or the taxable year ending April 30, 1963. Findings of Fact Petitioner, a corporation organized under the laws of the State of New York, had its principal place of business in New York, New York, at the time it filed its petition. It was, and still is, a wholly-owned subsidiary of Furness, Withy & Company, Ltd. (hereinafter referred to as Furness Withy), a publicly held resident foreign corporation organized under the laws of the United Kingdom. Petitioner filed corporation income tax returns for the taxable 59 years ending April 30, 1960, April 30, 1962, and April 30, 1963, with the district director of internal revenue, Manhattan District, New York, New York. Economic Stevedoring Corporation of Montreal, Ltd. (hereinafter Economic), is a Canadian corporation which was organized in 1923 as a wholly-owned subsidiary of Furness Withy. In 1930 Furness Withy sold *341 all of Economic's outstanding stock to petitioner for $5,000. Both petitioner and Economic maintain their books and records and report their income under the accrual method of accounting, using fiscal year ending April 30. At all relevant times Furness Withy was engaged in the international shipping business; petitioner, in stevedoring and terminal operations in the ports of New York and Newark, New Jersey; and Economic, in stevedoring activities in Montreal, Canada. During all periods relevant hereto, E. P. Rees was the president of Economic, as well as a director of Furness Withy; Charles Naylor was a director and the secretary-treasurer of Economic, as well as an officer and the financial manager for Canada of Furness Withy; William Harris was the resident director of Furness Withy, in overall charge of its business in the United States, as well as an officer-director of petitioner; and H. C. Hullen was the secretary-treasurer of petitioner. Prior to March 22, 1962, Economic had never declared a dividend. It had earned surplus of $375,881.03 [1] as of April 30, 1960, $484,729.03 as of April 30, 1961, and $659,890 as of April 30, 1962. *342 In 1960 Furness Withy decided to acquire the stock of Economic from petitioner and sought the advice of its New York accountants, Davies & Davies, concerning the anticipated purchase. Robert S. Davies, a member of the accounting firm, advised Furness Withy that the transaction should be effected by having Economic declare a substantial dividend and then having petitioner sell its Economic stock to Furness Withy for $5,000 (United States currency). In the early part of March 1962, pursuant to Davies' suggestion, E. P. Rees requested Charles Naylor, as treasurer, to analyze Economic's financial position, its cash and other assets, and compute how much of a dividend could be declared. Based on Economic's financial condition, including its anticipated profits through April 30, 1962, Naylor recommended that a dividend of $600,000 be declared. He indicated that, after accounting for the projected sale of certain marketable securities, Economic would have on hand cash in the amount of $431,000. Prior to March 22, 1962, Naylor further informed Rees and Huller that $400,000 of the suggested dividend of $600,000 could be paid immediately without any disruption of Economic's operations. *343 On March 22, 1962, at a meeting of its board of directors, Economic declared a dividend of $600,000. The minutes of the board for that date contain the following: The Chairman outlined the Company's financial and taxation positions and, following a brief discussion, upon Motion duly moved and seconded, it was RESOLVED that a dividend of $600,000.00 be declared payable to the Shareholder of record, Bay Ridge Operating Company Inc. as of 22nd day of March, 1962, and payment was made forthwith. Since petitioner was not a resident of Canada, the dividend was subject to a Canadian income tax computed at the rate of 15 percent. The responsibility for withholding the tax rested with Economic, and Economic was required to remit the tax within 15 days of the declaration of the dividend. Accordingly, Canadian income tax in the amount of $90,000 ($85,753.12 in United States currency), 15 percent of the entire dividend, was paid by Economic on April 4, 1962. By letter dated March 22, 1962, Naylor advised Hullen of the $600,000 dividend declaration, stating that it had been credited to petitioner on Economic's books and that $310,000 ($295,371.88 in United States currency), representing *344 $400,000 less the Canadian income tax of $90,000, had been placed to petitioner's credit at a specified bank. The letter added that "[we] now have a balance remaining to your credit of $200,000.00 which as agreed with you, will be liquidated at a later date." The agreement referred to in this letter was that petitioner, in order to accommodate Economic's preference to pay the balance of the dividend after it realized on its accounts receivable, would not demand immediate payment thereof. However, petitioner and Economic never agreed to defer payment of the balance until after April 30, 1962, and they 60 understood at all times that Economic would pay the $200,000 whenever petitioner desired it to do so. The $200,000 balance of the dividend was recorded on Economic's books on March 22, 1962, as an account payable. Near the end of April 1962, prior to the termination of its taxable year, petitioner recorded on its books and records the amount of $200,000 (then being $190,562.50 in United States currency) as an account receivable from Economic. At the meeting of Economic's board of directors held on March 22, 1962, E. P. Rees reported that arrangements had been made to sell *345 Economic's marketable securities. The securities were sold as follows: Security
Date Sold
Net Receipts
630 shs. Imperial Oil Ltd.
3-22-62
$30,997.02
1328 shs. Bell Telephone Co.
3-22, 3-23, and 3-26-62
75,851.42
Canadian Government Bonds
3-27-62 14,456.25 $121,304.69
Economic's balance sheet as of April 30, 1962, after payment of $400,000 on the dividend, disclosed the following current assets: Cash
$135,327
Accounts Receivable
75,677
Loans Receivable 112,697
Total
$323,701 The accounts receivable could have been readily discounted, if necessary, to cover part of the balance of the declared dividend. In fact, the accounts were actually paid in mid-May 1962. The loans receivable represented loans to directors and employees of Economic and other Furness Withy enterprises in Canada. If necessary, Economic could have liquidated these loans by transferring them to Furness Withy, which had $450,000 in cash assets at that time. Moreover, Economic easily could have borrowed funds. On June 27, 1962, Economic remitted the $200,000 balance of the dividend ($184,812.50 in United States currency) to petitioner. Six days earlier, *346 on June 21, 1962, William Harris as director and attorney-in-fact of Furness Withy wrote a letter to petitioner offering to purchase all of Economic's stock from petitioner for 5,000 United States dollars. At a special meeting of petitioner's board of directors held on June 25, 1962, Furness Withy's offer was accepted. The parties closed the transaction. After the sale Economic continued its business operations in the same manner as it had previously conducted them. On its corporation income tax return for the taxable year ending April 30, 1962, petitioner included in its gross income the full amount of the dividend declared by Economic ($571,687.50 in United States currency). Respondent determined that the portion of the dividend actually paid on June 27, 1962 $184,812.50 in United States currency, was taxable as a dividend in petitioner's taxable year ending April 30, 1963. Ultimate Finding of Fact The $200,000 balance of the dividend declared by Economic on March 22, 1962, was unqualifiedly subject to petitioner's demands prior to May 1, 1962. Opinion Section 316 of the Internal Revenue Code *347 of 1954 defines the term "dividend" to mean "any distribution of property made by a corporation to its shareholders" out of earnings and profits accumulated after February 28, 1913, or out of earnings and profits of the current taxable year. The time for reporting such a distribution is controlled by section 1.301-1(b) of the Income Tax Regulations, which provides that "[a] distribution made by a corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands." This test applies regardless of whether the taxpayer employs the cash or accrual method of accounting. Dynamics Corporation of America v. United States, 392 F. 2d 241, 247 (Ct. Cl. 1968); Commissioner v. American L. T. Co., 156 F. 2d 398, 400 (C.A. 7, 1946), affirming 3 T.C. 1048 (1944). The narrow issue for decision is whether the $200,000 balance of the March 22, 1962, dividend was unqualifiedly subject to petitioner's demands prior to May 1, 1962. This issue is factual. Avery v. Commissioner, 292 U.S. 210 (1934). Generally speaking, the *348 decided cases have employed three tests in applying the "unqualifiedly made subject to [the stockholders'] demands" language: (1) possession by the stockholder of an unrestricted, legal right to demand payment at any time, see 61 A. D. Saenger, Inc., 33 B.T.A. 135, 143 (1935), affd. 84 F. 2d 23 (C.A. 5, 1936), certiorari denied 299 U.S. 577 (1936); Valley Lumber Co. of Lodi, 43 B.T.A. 423, 426 (1941); cf. sec. 1.451-2(a), Income Tax Regs.; Wiseman v. United States, 371 F. 2d 816 (C.A. 1, 1967); (2) absence of a collateral agreement that the payment was to be deferred, thereby limiting the right to demand payment, see R. H. Bouligny, Inc., 45 B.T.A. 456, 460 (1941); Valley Tractor & Equipment Co.42 B.T.A. 311, 315 (1940); and (3) the financial ability, including credit and liquid assets as well as cash, of the declaring corporation to pay the dividend. Baker v. United States 17 F. Supp. 976, 979-980 (Ct. Cl. 1937); A. D. Saenger, Inc. v. Commissioner, 84 F. 2d 23, 25 (C.A. 5, 1936), affirming 33 B.T.A. 135 (1935), certiorari *349 denied 299 U.S. 577 (1936). The resolution of Economic's board of directors on March 22, 1962, declaring the dividend, no doubt created an unqualified obligation on Economic's part to pay, and an equally unqualified right on petitioner's part to receive, the entire dividend of $600,000, including the $200,000 here at issue. Both petitioner and Economic acted consistently with the existence of such an obligation and right. By stipulation the parties have agreed that Economic immediately recorded the $200,000 on its books as an account payable to petitioner and that, prior to the close of its taxable year ending April 30, 1962, petitioner recorded that amount as an account receivable. Moreover, Economic withheld and paid the Canadian income tax on the full amount of the dividend. Part of this tax could have been deferred by the simple expedient of limiting the dividend declaration to $400,000. [2] All of these facts persuade us that petitioner had a legal right to demand payment of the $200,000 in its taxable year ending April 30, 1962. *350 Respondent's primary contention, however, is that petitioner's right to the dividend was qualified by a collateral agreement, made even prior to the declaration, that the dividend would not be paid until some indefinite future time when Economic's cash position had improved. We disagree. Petitioner controlled Economic, and the evidence, we believe, shows that the timing for the payment was merely planned in such way to cause as little disruption to Economic as possible. The ultimate decision as to such timing rested with petitioner, and a fair appraisal of the evidence - which includes flat denials by officials of petitioner and Economic of the existence of an agreement such as that described by respondent - shows that nothing was ever done to qualify petitioner's immediate right to receive the dividend upon demand, reflected in the resolution of Economic's directors and confirmed by Economic's account payable and petitioner's account receivable. See R. H. Bouligny, Inc., supra at 460; Valley Tractor & Equipemnt Co., supra at 315. The words of the Court of Appeals in Wiseman v. United States, supra at 818, fn. 6, where the tables were turned and the taxpayer, *351 rather than the Commissioner, was seeking to postpone the taxation of a declared dividend, are particularly pertinent: Plaintiff argues that he did not "receive property," 26 U.S.C. §304, when the corporation merely entered an indebtedness on its books. Not only was the indebtedness noted without restrictions on time of payment, but plaintiff as sole stockholder of the corporation had the power to command payment at any time. Therefore, the district court was correct in treating te transaction as equivalent to a cash payment. Cf. Bazley v. Commissioner of Internal Revenue, 331 U.S. 737, 742, * * * (1947); * * *. Respondent maintains that, in any event, Economic's working capital requirements did not permit payment of the $200,000 during the taxable year ending April 30, 1962. While it is true that Naylor, Economic's treasurer, testified that payment by Economic on March 22, 1962, of the entire $600,000 would have created a strain on its cash position at that time, he clarified this statement by pointing out that a loan would have prevented any strain. And the law is clear that Economic was not required to have on hand sufficient cash to pay *352 the total amount unqualifiedly put to the credit of petitioner. Cash on hand is only one of the items making up the financial condition of Economic. See Baker v. United States, supra.Economic's balance sheet shows that 62 on April 30, 1962, it had cash on hand in the amount of $135,327 and accounts receivable in the amount of $75,677, which were paid within approximately two weeks. In addition, it had loans receivable totaling $112,697 - which could have been transferred to the prospective owner of its stock, Furness Withy - to say nothing of 40 years of successful operation, which gave it substantial borrowing power. See A. D. Saenger, Inc. v. Commissioner, supra. The dividend balance of $200,000 was taxable to petitioner in its taxable year ending April 30, 1962. Decision will be entered under Rule 50. Footnotes
1. All monetary references herein, unless otherwise specified, are to Canadian dollars.↩
2. Can. Rev. Stat. c. 148, § 106(1)(a) (1952), as amended by Income Tax Act, 7 Eliz. 2, c. 32, § 40(1)(1958): (1) Every non-resident person shall pay an income tax of 15% on every amount that a person resident in Canada pays or credits, or is deemed by Part I to pay or credit, to him as, on account of or in lieu of payment of, or in satisfaction of. (a) a dividend * * *.↩