Marvin E. SINGLETON, Jr. and Gertrude R. Singleton, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 75–4190.

United States Court of Appeals,
Fifth Circuit.

March 16, 1978.

Rehearing and Rehearing En Banc
Denied April 17, 1978.

Scott P. Crampton, Asst. Atty. Gen., Michael L. Paup, Arthur L. Bailey, Attys., Gilbert E. Andrews, Act. Chief, Appellate Sect., Tax Div., Dept. of Justice, Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent-appellant.

Anderson Wallace, Jr., Dallas, Tex., for petitioners-appellees.

Before TUTTLE, COLEMAN and RONEY, Circuit Judges.

TUTTLE, Circuit Judge:

This income tax dispute involves dividends paid to Singleton and his wife (hereinafter "taxpayer") by Capital Southwest Corporation (CSW). The taxability of these payments is in turn dependent upon the character of payments made to CSW by a subsidiary, Capital Wire and Cable Corporation (CW). The Commissioner contends that a distribution of $803,750 by the subsidiary to its parent in 1965 was CSW's part of a duly declared dividend of $1,000,000, distributed to stockholders of the subsidiary, including CSW and that since it was paid out of earnings and profits, it therefore was a true dividend. The taxpayer, on the other hand, contends, and the Tax Court held, that the payment amounted to an advance of the "allocable" amount of the subsidiary's tax liability, which the Commissioner found to be due seven years later.

The facts are outlined in the Tax Court opinion as follows. During its fiscal years ending March 31, 1964 and 1965, CSW was the parent corporation of an affiliated group of subsidiaries, including CW. CSW and its subsidiaries filed consolidated federal income tax returns for those fiscal years. On March 4, 1965, CSW sent a letter to CW which stated as follows:

> The consolidated Federal income tax return of Capital Southwest Corporation and subsidiaries for the year ended March 31, 1964, included the taxable income of Capital Wire & Cable Corporation for the period from June 1, 1963, to March 31, 1964. It is intended that for the year ended March 31, 1965, a consolidated Federal income tax return also will be filed which will include the taxable income of Capital Wire & Cable Corporation for the year. Capital Wire & Cable Corporation had income in each of the stated periods which would have been subject to Federal income taxes if separate returns were

filed; however, such income is off-set by losses, principally those of Capital Southwest Corporation, in the consolidated returns.

Because of the minority interest stock ownership in your corporation, it is deemed advisable for you to pay out as a dividend by March 31, 1965, an amount approximately equivalent to the Federal income tax that would be paid by you for both periods on a separate return basis, rather than paying the full amount of the tax savings up to Capital Southwest Corporation to compensate for the use of its losses in the consolidated return.

While it is not in any way anticipated that such shall be the case, should the Internal Revenue Service determine, and be upheld by the Courts, that for some reason the consolidation was not proper, or for any reason assert and successfully sustain deficiencies in income tax against Capital Wire & Cable Corporation for either of the stated periods attributable to the foregoing circumstances, then Capital Southwest Corporation herewith agrees to reimburse Capital Wire & Cable Corporation for any deficiencies in Federal income tax it is required to pay for either of these periods; however, such reimbursement shall be limited to the total amount of the dividend to be paid.

The minutes of the monthly meeting of the board of directors of CW, held on March 5, 1965, state in part as follows:

There was then a discussion of the tax consequences of the filing of a consolidated Federal Income Tax return with the company's parent, Capital Southwest Corporation. It was pointed out that the consolidation of Capital Wire's tax return with that of Capital Southwest Corporation would completely shield Capital Wire's income from taxes during the fiscal year ending March 31, 1965, and that a similar consolidation in the preceding fiscal year had also eliminated any tax liability on the part of Capital Wire & Cable Corporation. The tax saving effected in this manner amounted to $237,800 in the preceding year and an estimated $625,000 in the current fiscal year—a total of $862,800. Mr. Rains then advised the Directors of the company that although Capital Southwest Corporation was responsible for this elimination of Capital Wire's tax liability, it was his opinion that any distribution of the amount of the tax saving should not be paid directly to Capital Southwest Corporation, but should be paid to all shareholders in dividend form and in such amount as the Board of Directors might establish.

There followed a discussion of the amount of the dividend which the company should declare and it was generally agreed that this amount should bear some relation to the $862,800 tax saving accomplished by the filing of a consolidated return, with some additional amount in recognition of the company's record earnings during the current year. It was pointed out that a special dividend of $1.95 per share would amount to a total of $975,000, which, combined with the previously declared semi-annual dividend of $0.05 per share, would total $1,000,000. Upon motion duly made, seconded, and unanimously carried, it was:

RESOLVED that there is declared from the earned surplus of the corporation a special dividend of $1.95 per share on the common stock of the corporation, payable on the 25th day of March, 1965, to holders of such stock at the close of business on the 19th day of March, 1965, and the treasurer is directed and authorized to pay same on the date specified.

On March 31, 1965, pursuant to the agreement evidenced by the March 4, 1965 letter and the March 5, 1965 minutes, CW made a cash distribution of $1 million, of which CSW received $803,750.[1] In its fiscal year ending March 31, 1965, CSW received

---

1. Although the record is silent as to the percentage of ownership by CSW in CW, the statute, 26 U.S.C. § 1504(a), required at least 80%, and this payment demonstrates ownership of 80.375%.

payments, characterized at the time in its original consolidated income tax return as "dividends from subsidiaries," totaling $863,843.75. The precise amounts were:

| Subsidiary | Amount |
| --- | --- |
| Capital Wire & Cable Corp. | $803,750.00 |
| Southwest Leasing Corp. | 40,000.00 |
| Other Subsidiaries | 20,093.75 |
| | $863,843.75 [2] |

The consolidated returns as originally filed for the consolidated group for their fiscal years ending March 31, 1964 and 1965 showed no consolidated tax liability.

As a result of a subsequent examination by the Internal Revenue Service, deficiencies for the two years were asserted. They were finally settled by a compromise between the parties in *Capital Southwest Corp.*, Docket No. 4643–67, on January 5, 1972. Substantial taxes were determined to be owed by CSW and CW, amounting to less than the $803,750 paid by CW to CSW in 1965.[3] The taxpayer contends that only the amount by which the 1965 payment exceeded the tax liability as finally allocated to CW by the 1972 settlement is to be considered a dividend to CSW in 1965. The Tax Court, six judges dissenting, accepted this view, basing its decision on the rubric that in taxation the court looks to substance rather than form and on what it considered to be relevant court decisions to the effect that the payment by a subsidiary to its parent of the "allocable amount" of the total tax liability for the group is not a dividend but a "constructive" payment of the subsidiary's part of any ultimate tax liability.

The primary difficulty with the Tax Court's application of the "form vs. substance" principle is that the considerations that may result in a holding contrary to the form of the transaction are totally lacking here. This is not a case in which the trans-

action came out in the form of a dividend whereas it should have come out as a voluntary payment by the subsidiary to its parent as an "allocable" amount of its ultimate tax liability. The documents before the court, together with the parties' stipulation, which form the sole basis for any evidentiary finding, demonstrate beyond a doubt that CW intended to, and did, declare a dividend to its stockholders. Indeed, CW *had to* declare a dividend to get the desired funds in the hands of its parent corporation. The fact that a different tax incidence would have resulted if the subsidiary had been able to make a voluntary contribution to its parent, an 80 percent stockholder, and ignore the minority stockholders does not justify a judicial reconstruction of the transaction simply to permit the corporation to accomplish the desired result.

Further analysis in this regard underscores this conclusion. CW would have paid $862,800 in taxes for 1964 and 1965 but for the filing of consolidated tax returns by its parent, CSW. Because of large losses suffered by the parent corporation, the large taxable income of CW was thought to have been offset for purposes of the consolidated tax returns for the two years. No taxes were reported or paid for either corporation. If the parent's losses had been insufficient to offset all of CW's taxable income, CSW would have reported and paid taxes on the excess income. This amount would then have been "allocable" to CW as a member of the group which contributed to the tax liability. If the board of directors of CW had voted during the tax year to pay CSW this "allocable" portion of the tax then currently reported and paid by the parent, the case would be similar to *Beneficial Corp. v. Commissioner of Internal Revenue*, 18 T.C. 396 (1952), *aff'd per curiam*, 202 F.2d 150 (3d Cir. 1953) and *Dynamics*

**2.** The payments made by subsidiaries other than CW were also in form of dividends. It is noted that when added to the $803,750 these payments equal enough to "reimburse" CSW for the entire saving of $862,800. Although taxpayer also claimed the $40,000 from Southwest Leasing Co. was not a dividend, the Tax

Court decided this issue against the taxpayer. The dividends from the other subsidiaries are not now in issue.

**3.** The parties dispute the amount correctly attributable to CW, but we need not resolve this dispute in view of our disposition of the case.

Corp. of America v. United States, 392 F.2d 241, 183 Ct.Cl. 101 (1968). In both of those cases there was a consolidated tax liability for the years in question. The subsidiary corporations, by resolution of their boards of directors, voted to pay over the allocable amount of the consolidated tax liability to their parent corporations. In fact, they paid the entire amount of the savings from the use of consolidated returns. There was no suggestion that the subsidiary corporations were concerned about the rights of minority stockholders when they determined to "compensate" their parent for its use of its loss position to reduce the amount of taxes payable by the group in their consolidated returns. It is not apparent from the opinion in either case whether the directors of the two subsidiary corporations were willing to ignore the rights of the minority stockholders by devoting a substantial amount of their current earnings to reimburse the parent corporation for the full amount of the savings effected or whether the control of the parent was so pervasive as to make this matter unimportant. The taxpayers contended that the whole amount paid by the subsidiaries to the parent was excluded because it was all designated as "reserves for Federal taxes." Both courts held that the excess of the payments over the correct "allocable part" was a dividend, which is all that the Commissioner contended, and which is not in question here.

The letter from CSW and the action of the CW board of directors seem to confirm the idea that CW was willing to transfer to its parent the entire amount that the parties considered had been saved by the use of consolidated returns. If this had been done by CW in the same manner as it was done in *Beneficial* and in *Dynamics*, it would be an act by the directors of CW which would permit the parent to reap all of the benefits from filing the consolidated returns. Since CSW owned only 80.375 percent of CW, it would obviously be contrary to the financial interests of the minority stockholders of

CW to allow a direct subsidy payment to CSW of all such benefits. *See Western Pacific R. R. Corp., et al. v. Western Pacific R. Co.,* 197 F.2d 994 (9th Cir. 1952) (discussion of such payments by subsidiaries to their parent). *See also Alliegro v. Pan American Bank of Miami,* 136 So.2d 656 (Fla.App.1962) (establishing the rights of minority stockholders of a subsidiary in such a situation).

Of course, since CW had earnings sufficient to justify a dividend large enough to "compensate" its majority shareholder for the whole amount saved by the filing of consolidated returns, the minority shareholders could not be heard to complain. They received their dividends on their shares and had no concern with what CSW did with its $803,375 dividend.[4]

As clearly indicated by the correspondence and the minutes, CW declared a dividend of $1.95 per share in addition to the regular semi-annual dividend of $.05 a share already declared. It was generally agreed that these dividends would

> bear some relation to the $862,800 tax saving accomplished by the filing of a consolidated return, *with some additional amount in recognition of the company's record earnings during the current year.* [Emphasis added.]

The stipulation between the parties states: "On March 31, 1965, pursuant to the agreement evidenced by Exhibits 4(d) and 5(e) [the letter and minutes] CW made a cash distribution of $1,000,000 of which CSW received $803,750." This clearly indicates that CSW's share includes its part of the $1.95 special dividend, which the minutes indicated not only bore some relation to the tax saving but also included "some additional amount in recognition of the company's record earnings during the current year." Also, it included CSW's proportionate part of a regular semi-annual dividend of $.05 per share. The record is silent as to the part of the $1.95 dividend that repre-

---

4. The Government calls attention to the fact that the taxpayer here was one of the minority stockholders of CW as well as a stockholder in

CSW and that he returned his part of the March 31, 1965 dividend as taxable for that year.

sented a distribution to the shareholders of part of the "record earnings of the year." It does demonstrate, however, that CSW's part of the $.05 dividend was approximately $20,000.

Taxpayer claims that the entire amount of $803,750 was intended not to be a dividend at all, but an "allocable" part of CW's ultimate tax liability for 1964 and 1965 as finally determined by settlement in 1972. Reference to the documents belies this intent. The intent of CSW was to have CW pay it an amount equal to the entire savings that were contemplated for the several consolidated taxpayers as a result of filing consolidated returns. CSW used its position as 80 percent stockholder to have this accomplished by a declaration of dividends. No one contemplated that any amount was ever to be used to pay any taxes allocable to CW. The March 4 letter suggested a dividend "[t]o compensate [CSW] for the use of its losses in the consolidated return." In even more explicit terms the letter stated: "[I]t is not in any way anticipated that . . the Internal Revenue Service [would] determine, and be upheld by the Courts, that for some reason the consolidation was not proper" or that the Service would "for any reason assert and successfully sustain deficiencies." If the unexpected happened, however, the letter provided that CSW would reimburse CW for any deficiencies that resulted.

The Tax Court's determination that "the intent of the payment by CW to CSW was a payment of CW's 'constructive tax'" is clearly erroneous. As stated by three dissenting judges, "[e]very indicium of a 'dividend' in the tax sense of the word was present herein." The taxpayer concedes that the earnings and profits of CW were

sufficient to enable that company to declare and pay out as a dividend the $1,000,000 that yielded $803,750 to CSW. The record does not disclose how much more earnings and profits were available for the payment of dividends on March 31, 1965.[5]

In light of the clear intent to pay the $1,000,000 as a dividend, the $803,750 received by CSW must be considered as a dividend unless CW had insufficient earnings and profits to permit it to pay both amounts without impairing capital. Otherwise, the taxpayer would be receiving tax-free as a return of capital what should be taxable as dividends. In such a situation the "substance" of the transaction as determined by the Tax Court would be to permit a payment out of earnings and profits to be received tax-free by the taxpayer on the false assumption that it was a return of capital.[6]

Whether it be based upon the presumption of correctness of the Commissioner's deficiency notice or upon the requirement that taxpayer carry the burden of proof of showing the Commissioner's determination to be incorrect, see Southwestern Life Insurance Co. v. United States, 560 F.2d 627 (5 Cir. 1977); MacGuire v. Commissioner of Internal Revenue, 450 F.2d 1239 (5th Cir. 1971) and Hord v. Commissioner of Internal Revenue, 143 F.2d 73 (6th Cir. 1944), the burden was on the taxpayer to produce evidence on the critical issue of whether the accumulated earnings and profits account of CW on March 31, 1965 was sufficient to permit the payment of the dividend on that date together with the ultimately ascertained tax liability of CW in the 1972 settlement. In the absence of such proof, the Commissioner's determination that CSW's part of the declared divi-

---

5. The record does disclose taxable income for the years 1964 and 1965 of $1,881,254.84, which would, of course, be more than sufficient to pay the allocable amount of CW's tax liability, $755,167.22, and the $1,000,000 dividend without impairing capital. The Government concedes that the taxable income figure is not proof of the status of the earnings and profits account of CW. Such figure, however, demonstrates the great likelihood that there were substantially more funds available than required to

pay both the allocable portion of CW's taxes and the $1,000,000 in dividends.

6. The taxpayer in his brief commenced his "Summary of Argument" by saying: "This case concerns primarily the question of whether the distributions taxpayer received from Capital Southwest during 1965 and 1966 were dividends, taxable as ordinary income, or were non-taxable returns of capital."

dend was in fact a dividend cannot be set aside. *Southwestern Life Insurance Co. v. United States, supra.*

This disposition of the appeal makes it unnecessary to consider the alternative contentions of the parties.

The judgment is REVERSED.