**COMMISSIONER OF INTERNAL REVENUE**
v.
**VAN BERGH.**
No. 25, Docket 22712.

United States Court of Appeals
Second Circuit.
Argued Dec. 9, 1953.
Decided Jan. 6, 1954.

Fred E. Youngman, Washington, D. C., H. Brian Holland, Asst. Atty. Gen.,

Ellis N. Slack, A. F. Prescott, Sp. Assts. to the Atty. Gen., for petitioner.

David Alter, Simons, Schur & Straus, New York City, Max Perl, New York City, of counsel, for respondent.

Before CHASE, Chief Judge, and L. HAND and MEDINA, Circuit Judges.

L. HAND, Circuit Judge.

This case arises upon a petition of the Commissioner of Internal Revenue to review an order of the Tax Court, deciding that the taxpayer, Van Bergh, had overpaid $1,369.32 upon his income tax for the year, 1945. The decision turns upon whether the overpayment by Van Bergh, who had a "net operating loss" in his income for 1946 which he was entitled to "carry back" to his income tax for 1945, should be computed without deduction; or whether the Commissioner might reassess his tax for 1945, and use as a set-off against any overpayment a deficiency that had escaped assessment in 1945. Two points are involved: (1) whether the Commissioner had power to reopen the assessment for 1945 at all; and (2) whether on the merits Van Bergh's tax, as assessed in 1945, was underpaid. As the Tax Court held that the statute of limitations barred any reassessment for 1945 even as a set-off, it did not decide the second point; nor shall we do so, although we differ on the first point. Nothing that we say is to be taken as indicating any opinion as to whether Van Bergh underpaid his tax for 1945.

The facts were as follows. Van Bergh filed his return for 1945 on or before January 15, 1946, reporting a tax of nearly $11,000 which he paid. More than three years later—that is, on February 1, 1951—the Commissioner mailed a notice of deficiency of a little more than $10,000 for 1945; and, although at one time he asserted that this notice, being less than five years after March 15, 1946, was in season, on this appeal he appears to have abandoned that position, the Tax Court having ruled that the three years limitation barred the assessment. Before March 15, 1950: i. e. within three years after the due date of his return for 1946, Van Bergh filed a claim for refund of part of his payment for 1945, basing it upon § 122(b) (1) of the Internal Revenue Act [1] which authorizes a taxpayer "for each of the two preceding taxable years" to "carry-back" any "net operating loss". In 1946 he did in fact have a "net operating loss" of $3,294.23, which, if used as a loss in 1945, would, as the Commissioner concedes, have reduced his tax for that year by $1,369.32, the amount now claimed as a refund. In answer the Commissioner asserts that, although the three year statute may have barred the assessment of February 1, 1951, he is nevertheless free to treat as a set-off against the refund any underpayment of the tax due in 1945. He argues that, under the doctrine first laid down in Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, the right to a refund depends upon the principles determining an action for money had and received, in which the question always is whether the defendant is entitled in good conscience to keep the money.[2] This is admittedly the doctrine, when a taxpayer sues under the Tucker Act to recover a tax wrongfully collected,[3] and the Commissioner argues that it must apply to an order of the Tax Court; because, since that, as res judicata, would "probably" bar the defence, it would in effect obliterate the action. Van Bergh answers that the doctrine is to be confined to occasions when the refund arises out of the payment of a tax arising and assessable in the same years as the putative unassessed deficiency that is to be the set-off; and that here, although it is true that the money to be refunded was paid in 1945, the refund itself arose out

1. § 122(b) (1), Title 26 U.S.C.

2. Bull v. United States, 295 U.S. 247, 261, 262, 55 S.Ct. 695, 79 L.Ed. 1421.

3. Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265.

of a "net operating loss" that had not existed in 1945.

We do not feel the force of this distinction. The purpose of the "carry-back," or "carry-over," privilege is to allow a taxpayer some equivalent for the fact that he has not been able to reduce his tax by a loss, because he has had no income in that year against which to credit it; and the only practicable equivalent is by a fiction to treat the loss as a deduction from his income in an earlier, or a later, year. There are two possible ways in which this might be done: (1) to allow the loss as a deduction from the net income as returned in the earlier, or the later, year; (2) to recompute the whole income for the earlier, or later, year, using the loss as a credit. While there is nothing in the statute that expressly adopts the second method, we can see no reason to suppose that, when Congress decided to allow the loss to be treated as though it had in fact occurred in the earlier, or later, year, it did not mean it to be so treated for all purposes. If this is not true, it will result that the taxpayer will be put in a better position, when the loss occurs in a later, or an earlier, year, than when it occurs in the year when it is allowed as a deduction. That obviously cannot have been the intention.

Van Bergh cites two decisions of the Tax Court [4] which, he says, have held the contrary; but he is mistaken. In each the court was considering § 3780 of the Internal Revenue Act,[5] subdivision (a) of which allows a taxpayer to file an "application for a tentative carry-back adjustment"; and subdivision (b) declares that on receiving it "the Commissioner shall make * * * a limited examination of the application * * * and shall determine the amount of increase or decrease in each tax attributable to such carry-back * * *. Each such increase shall be deemed determined as a deficiency and shall be as-

sessed". It will be observed that the Commissioner's action not only is described as a "tentative carry-back adjustment", but that he need not make his "limited examination" at all except "to the extent he deems practicable" within the ninety days. Subdivision (c) provides that, if he finds that "the amount * * * refunded * * * is in excess of the overassessment attributable to the carry-back * * * he may assess the amount of the excess as a deficiency". The two decisions cited held that the Commissioner's power under § 3780(c) to assess a deficiency is limited, as indeed the words expressly declare, to a deficiency which is "attributable to the carry-back"; and that it does not authorize him to reopen the assessment for the earlier year. This effectively distinguishes these decisions from the case at bar; for, whatever be their scope, they were confined to § 3780 (c): that is, to a "tentative carry-back adjustment", under which the taxpayer has received, or has been credited with, some refund. They do indeed hold that, in reassessing as a deficiency a refund made under an "application" authorized by § 3780(a), the Commissioner may not avail himself of an underpayment in the earlier year. That does not mean, however, that upon his original "tentative determination" of the claim for a refund, he is forbidden to search the return for underpayments in the earlier year, and to use them as set-offs to the refund. At most it means no more than that, if he fails to open the earlier assessment upon that examination and grants a refund, he may not thereafter do so, when he assesses that refund as a deficiency. We need not therefore pass upon the correctness of these decisions, because they do not bear upon the facts at bar.

Finally, Van Bergh argues that it is not necessary to remand the cause to determine whether he underpaid his tax in 1945, and whether there was any support on the merits for the Commissioner's

---

4. Leuthesser v. Commissioner, 18 T.C. 1112; Bouchey v. Commissioner, 19 T.C. 1078.

5. § 3780, Title 26, U.S.C.

claim to a set-off; because any such right the Commissioner forfeited by his conduct in the proceeding in the Tax Court. The facts on which he relies are as follows. In "Findings of Fact and Opinion," filed June 12, 1952, the judge held nothing as to Van Bergh's claim for a refund, but only that the Commissioner's assessment on February 1, 1951, was barred, because the three year limitation applied to it. Both parties filed "Computations" under Rule 50, Rules of Practice, Tax Court, 26 U.S.C.A. § 1111, —Van Bergh, on August 12th; the Commissioner, on September 5th, and at a hearing on September 10th, the Commissioner argued that the claim for a refund had been filed too late and should be denied on that account. The judge apparently accepted this argument; at least the order he entered on September 23rd, followed his opinion, and merely declared invalid the assessment of February 1, 1951. Van Bergh thereupon on October 27th moved to vacate the order of September 23rd and to determine the overpayment; and this the judge did on November 7th. Not only does the record contain nothing to suggest that in making this order he determined the merits of the Commissioner's claim that Van Bergh had underpaid his tax for 1945; but it is clear that he did not think that the merits of the claim were before him, for he said of the overpayment that its "amount does not exceed the amount of such overpayment attributable to a net operating carry-back for the year, 1946." That was language borrowed from § 3780(c), and showed that he did not think the merits were open. This order the Commissioner moved the Tax Court in banc to review, and the motion was denied on December 15th.

 Van Bergh's argument is that the Commissioner's conduct "served to confuse the issues," because he misstated to the Tax Court the "timeliness of taxpayer's claim for refund at the hearing on the computation"; and it was by this means that he secured the order of September 23rd. We will assume with Van Bergh that it was the Commissioner's argument upon the hearing on computation on September 10th that induced the judge not to pass upon the claim for refund. We will also assume for argument that he did not at the same time press his other position: i. e. that on the merits he had a set-off against the refund. However, we cannot agree that by so doing he forfeited the set-off, if in fact Van Bergh had underpaid his tax for 1945. Perhaps upon the hearing under Rule 50 he should have presented all the objections he had; but it would be an unjustified penalty to forfeit his defence upon the merits, when he won on another ground. Certainly there is no evidence that he intended to abandon it, and his failure to press it did not impose any substantial added burden upon Van Bergh. As for paragraph 10 of the stipulation, it is so plainly irrelevant that we need not discuss it.

Order reversed; cause remanded for further proceedings in accordance with the foregoing opinion.