**SPRINGFIELD STREET RAILWAY COMPANY**

v.

**The UNITED STATES.**

No. 26–62.

United States Court of Claims.

Jan. 11, 1963.

Charles L. Kades, New York City, for plaintiff. Charles V. O'Neill, New York City, on the briefs.

S. Laurence Shaiman, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner, Philip R. Miller, and Earl L. Huntington, Washington, D. C., on the briefs.

LARAMORE, Judge.

The plaintiff in this action seeks an income tax refund for the year 1954. Its claim is premised upon a 1955 net operating loss being carried back against 1954 income. The case arises upon the defendant's motion to dismiss.

The ultimate question raised before this court concerns the amount of 1955 carryback loss to be allocated between 1953 and 1954 income. The carryback loss must first be applied against 1953 income.[1] If any loss remains, it may then be applied against 1954 income. The plaintiff reported a taxable income in 1953 sufficient to absorb all of the carryback loss. However, plaintiff failed to claim an allowable deduction in 1953, which greatly reduced its correct taxable income for that year. The statute of limitations now bars plaintiff from claiming any tax refund for the year 1953,

---

1. Section 172 of the Internal Revenue Code of 1954, 26 U.S.C. § 172 (1958 Ed.)

including any refund which would have arisen from a timely carry back of the 1955 loss. The question to be decided is whether the carryback loss has to be applied against plaintiff's reported 1953 income or its correct taxable income for that year. If the latter, a carryback loss will remain to be applied against 1954 income and will entitle plaintiff to a refund.

The facts briefly are these: The plaintiff is a street railway company, incorporated in 1868, which operates in Springfield, Massachusetts. In 1909, it acquired by merger the Western Massachusetts Street Railway franchise network. The plaintiff abandoned portions of this Western Massachusetts franchise network in 1953 and 1955. It did not take income tax loss deductions for these abandonments when they occurred because it did not believe that it was entitled to such deductions until the entire franchise network was abandoned. In 1960, plaintiff received a Revenue Agent's Report which stated that plaintiff could take deductions for its abandonment losses in the years in which they occurred.

At the time plaintiff received this report it was no longer able to claim a refund due to the 1953 abandonment loss, because the statute of limitations had run on that year. However, plaintiff could still claim a refund for the 1955 abandonment loss and, as plaintiff had already sustained a net operating loss in 1955, it was allowed to carry back its 1955 abandonment loss. Although 1953 was closed by the statute of limitations for refund purposes, plaintiff first had to carry back the loss to that year. Any loss remaining then, after wiping out 1953 income, could be carried back to 1954.

The plaintiff's 1953 reported adjusted net income was $215,434.26. This did not take into account the 1953 abandonment loss of $102,571.20, which plaintiff would have had as a deduction if it had timely reported it. The plaintiff's 1955 abandonment loss carryback amounted to $195,537.80. If the plaintiff can apply its carryback loss to its correct 1953 taxable income (reported income minus abandonment loss deduction), it will have $82,674.74 remaining carryback loss to be applied against 1954 income and be entitled to a refund for that year of $42,990.76. The defendant contends that the carryback loss must be applied against the plaintiff's reported income for 1953. Consequently, no carryback loss would remain to be applied against 1954 income.

The defendant's position is that when the statute of limitations bars an additional assessment or refund for a year, the statute also acts to bar other deductions in such year from being considered when a loss is being carried back. Defendant bases its argument on three cases which it terms highly analogous to the present case. In Leuthesser v. Commissioner, 18 T.C. 1112 (1952) and Bouchey v. Commissioner, 19 T.C. 1078 (1953), the Commissioner attempted to make additional assessments for a year barred by the statute of limitations because in such year an operating loss carryback had previously entitled the taxpayers to a refund. The Commissioner argued that the period of limitations for the year to which the carryback loss was applied became coextensive with the period of limitations for the year of the original loss. Therefore, the Commissioner contended the period of limitations had not yet closed on the year in which the carryback loss was taken because the year of the original loss was still open. The Tax Court rejected this argument. It said that the applicable statute involved in the case, section 3780 of the Internal Revenue Code of 1939, which provided for a tentative carryback adjustment, only allowed the Commissioner to make a deficiency assessment for that part of the refund which resulted from an erroneous determination of application of the section 3780 carryback loss. It did not open up the year, to which the loss had been applied, for determination of deficiencies unrelated to the carryback loss. Similarly, in Deakman-Wells Co., Inc., v. Commission-

er, 213 F.2d 894 (C.A. 3d), it was held that the Commissioner could only make additional deficiency assessments for a year closed by the statute of limitations if such deficiency was attributable to a carryback loss.

The defendant correctly interprets these cases as holding that no new assessments can be made for a year which has been closed by the statute of limitations. However, it is a very weak analogy to apply that holding to the instant case. If the plaintiff were seeking a refund for 1953 taxes, a year closed by the statute of limitations, the analogy would be applicable. Here plaintiff is not seeking a refund for 1953 taxes, but for 1954 taxes, an open year, and therefore the cases cited by defendant do not bear on the issue in the present case.

It should also be noted that the cases cited by defendant were distinguished by the Court of Appeals for the Second Circuit in Commissioner of Internal Revenue v. Van Bergh, 209 F.2d 23, and later in Phoenix Coal Co., Inc. v. Commissioner, 2 Cir., 231 F.2d 420. The Court of Appeals in the above-cited cases held that the Leuthesser, Bouchey and Deakman-Wells cases, supra, were limited in application to the denial of the imposition of an affirmative assessment, unrelated to a carryback loss, in a closed year.

Both Van Bergh, supra, and Phoenix Coal Co., Inc., supra, allowed recomputation of the taxable income in a closed year in order to determine the correct amount of a loss deduction which could be carried back. In Van Bergh, supra, the taxpayer filed a timely claim for refund resulting from a 1946 operating loss carried back to 1945. The Commissioner recomputed taxpayer's 1945 tax and used as a setoff against the overpayment resulting from the 1946 carryback, a deficiency in the tax due for 1945, notwithstanding the fact that the statute of limitations barred any assessment of a deficiency for 1945 taxes. The Court of Appeals held that the statute of lim-

itations did not prevent the Commissioner from computing the correct tax liability for 1945, though it did bar the Commissioner from collecting a 1945 tax deficiency. In speaking for the Court, Judge Learned Hand stated:

" * * * The purpose of the 'carry-back,' or 'carry-over,' privilege is to allow a taxpayer some equivalent for the fact that he has not been able to reduce his tax by a loss, because he has had no income in that year against which to credit it; and the only practicable equivalent is by a fiction to treat the loss as a deduction from his income in an earlier, or a later, year. There are two possible ways in which this might be done: (1) to allow the loss as a deduction from the net income as returned in the earlier, or the later, year; (2) to recompute the whole income for the earlier, or later, year, using the loss as a credit. While there is nothing in the statute that expressly adopts the second method, we can see no reason to suppose that, when Congress decided to allow the loss to be treated as though it had in fact occurred in the earlier, or later, year, it did not mean it to be so treated for all purposes.". [2]

Phoenix Coal Co., Inc., supra, involved a carryback situation similar to the present case. In that case the court upheld the Commissioner's recomputation of taxpayer's 1945 income in order to lessen the amount of a 1947 net operating loss which could be carried back to 1946. 1945 was a closed year; however, the taxpayer's reported 1945 net income had been understated because certain non-allowable deductions for insurance payments and charitable contributions had been taken. The 1947 loss deduction had to be applied first against the 1945 income. The amount of the remaining loss deduction then could be applied against 1946 income and would determine the amount of taxpayer's 1946 re-

2. 209 F.2d 25.

fund. The court held that the loss deduction had to be applied against taxpayer's greater recomputed 1945 income, which left less of the loss deduction to be applied against its 1946 income, and thereby reduced taxpayer's 1946 refund.

Other cases in which a court allowed matters arising in a closed year to be considered in determining a correct operating loss carryback or carryover deduction include Phoenix Electronics, Inc. v. United States, D.C., 164 F.Supp. 614, and W. M. Ritter Lumber Co. v. Commissioner, 30 B.T.A. 231 (1934).

In addition, Rev.Rul. 218, 1953–2 Cum. Bull. 176, and Rev.Rul. 56–285, 1956–1 Cum.Bull. 134, authorize recomputation of income for closed years when an operating loss deduction is to be carried forward or back. We are of the opinion that the method of recomputation allowed in these cases and rulings are applicable to the present case.

However, the defendant attempts to distinguish these cases and rulings from the instant case on two different grounds. First, the defendant contends that those cases which were originally decided by the Tax Court have no precedent value for this court, because the Tax Court has special statutory authorization to consider prior years in determining the correctness of a deficiency assessment. Second, the defendant claims that those cases in which the Government obtained a setoff came under the doctrine of equitable recoupment which does not apply to taxpayer.

In support of its first contention defendant cites section 272(g) of the Internal Revenue Code of 1939, which provided:

" * * * The [Board]. Tax Court in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid."

This section is similar to section 6214(b) of the 1954 Internal Revenue Code.[3] The defendant argues that because Phoenix Coal Co., Inc. v. Commissioner, supra, and W. M. Ritter Lumber Co. v. Commissioner, supra, were decided originally by the Tax Court pursuant to its authority under section 272, they have no application to the instant case in that this court and the district courts do not have any statutory authorization to consider matters in other taxable years for the purpose of determining a tax refund for a year at issue.

■ The answer to this contention is that ample authority exists to support this court's, as well as the district courts', right to examine tax matters in other years when such examination is necessary to determine the tax liability for a year at issue. See National Forge & Ordnance Co. v. United States, 151 F.Supp. 937, 139 Ct.Cl. 204; Todd Shipyards Corp. v. United States, 161 F.Supp. 401, 142 Ct.Cl. 507; Budd Company v. United States, 252 F.2d 456 (C.A. 3d); Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 65 S.Ct. 1328, 89 L.Ed. 1720; Phoenix Electronics, Inc. v. United States, supra. This court's general authority was expressed in Magee v. United States, 37 F.2d 763, 68 Ct.Cl. 771, 779, aff'd 282 U.S. 432, 51 S.Ct. 195, 75 L.Ed. 442 as follows:

" * * * When suit is brought in this court on a claim against the United States, if it is one within its jurisdiction, the court has power to adjudicate and determine all matters necessary to the establishment of the validity of the claim. * * * "

We think the above statement is as applicable to this case as it is in other cases which come before this court. We do not believe that the Tax Court has more authority because of section 272 than this court or the district courts in ex-

3. 26 U.S.C. § 6214(b) (1958 Ed.).

amining tax matters for years not at issue.

This also appears to have been the view of the court in Phoenix Coal, supra, which upheld the Tax Court's authority to recompute deductions in a closed year. In that case the Court of Appeals cited section 272 only to buttress its decision, and also relied for support on Norda Essential Oil & Chemical Co., Inc. v. United States, 230 F.2d 764 (C.A. 2d). Furthermore, there is evidence that the purpose of section 272(g) was to limit the jurisdiction of the Board of Tax Appeals (now the Tax Court) and not to increase it. Section 272(g) was first enacted as section 274(g) of the Revenue Act of 1926. Its purpose was explained in the Report of the Committee on Ways and Means of the House of Representatives which accompanied the bill which later became the Revenue Act of 1926 and read as follows:

> "Subdivision (g) limits the jurisdiction of the Board in determining a deficiency to the taxable year with respect to which the deficiency is claimed, and provides that while the Board shall consider any facts with relation to the taxes for other taxable years that may be necessary to correctly redetermine the amount of the deficiency, the Board shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid." [4]

Defendant's second contention is that those cases involving a redetermination of taxes in a closed year for the purpose of permitting a setoff by the Government came under the doctrine of equitable recoupment. The doctrine of equitable recoupment was first set forth in Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, which held that in determining a tax claim against the United States, when the statute of limitations had run against the Government, the United States could set off additional taxes based on disallowed deductions or unreported income which would reduce the amount of the claim, even though a deficiency could not be assessed. The holding was based on the theory that the tax claim was an action for money had and received and in order to recover the taxpayer had to show that he overpaid his tax and the Government had money which he was entitled to receive.

However, the doctrine of equitable recoupment has not applied to every case where the Government has been allowed to recompute a taxpayer's income for a closed year. In Phoenix Electronics, Inc. v. United States, supra, the statute of limitations barred opening up of the taxpayer's 1947 tax liability, but the Commissioner was allowed to go beyond the 1947 tax return and assert that unauthorized deductions were taken which resulted in a greater operating loss than the taxpayer should have been allowed. The Commissioner was then allowed to assess deficiencies in 1949 and 1950 which had resulted from taxpayer carrying over a greater 1947 loss deduction than it was entitled to under its corrected 1947 net operating loss. Thus the Commissioner was allowed to affirmatively assert deficiencies, and therefore the doctrine of equitable recoupment did not apply.

Commissioner of Internal Revenue v. Van Bergh, supra, allowed the Government to obtain a setoff on the basis of equitable recoupment. However, Judge Learned Hand determined in that case (quoted earlier in this opinion) that a carryback loss can result in a recomputation of an earlier year's income, and his determination was not limited to an action for equitable recoupment, but was a general interpretation of the law regarding carrybacks which is applicable to the present case.

Our decision is supported by Rev.Rul. 218, 53–2 Cum.Bull. 176, which requires carried back or carried over losses, not claimed as deductions in the appropriate

4. Report on H.R. 1, 69th Cong., 1st Sess. (1925) reprinted 1939–1 Cum.Bull. (Part 2) 315, 322.

year, to be included in computing income for that year without regard to the statute of limitations, when determining the amount of another carryback loss which can be applied to that year. The instant case differs from the example in the revenue ruling in two minor respects: (1) an abandonment loss deduction instead of a carryback loss deduction failed to be taken by the plaintiff, and (2) the plaintiff stands to gain instead of lose by applying the carryback to recomputed income. But, the principle of the ruling, *i.e.,* that deductions which were allowable if taken, but are now barred by the statute of limitations, still have to be considered as having been taken when applying a carryback loss, is the same principle we are applying in this case.

One other point should be mentioned. If, in the instant case, the facts were reversed and the plaintiff had understated its reported 1953 taxable income, it is undisputable, according to the cases cited in this opinion, that the Government would be permitted to recompute the plaintiff's greater correct 1953 income. This would then increase the amount of plaintiff's 1955 carryback loss which would have to be applied against 1953 income. Consequently, the remaining carryback loss to be applied against 1954 income would be decreased and thereby result in a smaller refund. Therefore, we do not understand why recomputation of income for a closed year should only be allowed when it will benefit the Government, and not under similar circumstances when it will benefit the taxpayer. In either case, both parties are required to preserve their tax records, for a period after the statute of limitations has run, and this decision will not work undue hardship in respect thereof.

We hold, therefore, that the plaintiff is entitled to correctly compute its 1953 income, including therein its deduction for its 1953 abandonment loss, in order to determine the amount of its 1955 carryback loss to be applied against its 1953 and 1954 incomes.

Accordingly, the defendant's motion to dismiss the plaintiff's petition is denied.

JONES, Chief Judge, and DAVIS, DURFEE and WHITAKER, Judges, concur.