MARY K. ROBARTS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27290–91.          Filed July 27, 1994.

*George W. Ericksen,* for petitioner.
*Willie Fortenberry, Jr.,* for respondent.

## OPINION

GERBER, *Judge:* The parties filed cross-motions for summary judgment concerning whether petitioner was entitled to elect to exclude gain from the sale of her residence under section 121[1] for 1988, when such an exclusion had been claimed

---

[1] All section references are to the Internal Revenue Code in effect for the year in issue, and

for 1979. Respondent determined a $32,894 deficiency in petitioner's 1988 income tax based solely upon the disallowance of petitioner's attempt to exclude income from the sale of her residence during 1988. The parties have stipulated some of the facts, and the remainder was provided in the form of affidavits supplied with the summary judgment motions.

*Background*

At the time of the filing of her petition in this case, petitioner resided at Tampa, Florida. Petitioner's spouse died on August 5, 1978, and the death prompted her to place her residence at 3208 Chapin Avenue, Tampa, Florida (Chapin property), for sale. Petitioner located a property at 5219 Crescent Drive, Tampa, Florida (Crescent property). The Crescent property comprised a single-family house with an adjacent duplex. The duplex was about 50 years old and originally was a single-family dwelling, but it had been divided into two units with a common wall. The duplexes were rented at the time the Crescent property was purchased. On November 29, 1978, petitioner purchased the Crescent property for $48,500.

On April 4, 1979, petitioner sold the Chapin property for $36,000. Petitioner was at least 55 years of age when she purchased the Crescent property and sold the Chapin property. H. Edward Woods (Woods), petitioner's certified public accountant (C.P.A.), prepared her 1978 return and applications for extensions of the time for filing. Petitioner signed her 1978 return August 21, 1979, and it was filed shortly after that date. Schedule E of petitioner's 1978 return reflects $16,000 as the cost basis for purposes of depreciation of the duplex on the Crescent property. Additionally, $300 of rent income is reflected on the 1978 Schedule E. Petitioner purchased a homeowner's insurance policy during 1979 which insured the "dwelling" for $35,000 and "other structures" for $3,500.

Petitioner's 1979 income tax return, signed by her on May 14, 1980, contained a Schedule E reflecting the $16,000 cost basis of the Crescent property duplex, $3,600 in rental

all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

income, depreciation of $2,285.71, and expenses of $1,907.55, for a net loss of $593.26. The $2,285.71 depreciation was based upon the $16,000 cost basis of the duplex. With respect to the sale of the Chapin property, petitioner included a Form 2119 (Sale or Exchange of Personal Residence) with her 1979 return. Petitioner's return reflected $7,320.77 of gain on the sale of the Chapin property for which there was a section 121 election to exclude the gain. The gain was computed as follows:

| | |
|---|---|
| Selling price | $36,000.00 |
| Less: Commissions and expenses of sale | 879.23 |
| Amount realized | 35,120.77 |
| Basis | 27,800.00 |
| Gain on sale | 7,320.77 |

Petitioner, at the time of signing her 1979 return, was not aware that her return preparer, Woods, had caused the election of the section 121 exclusion of gain. She believed that the sale of one home for $36,000 and the purchase of another for $48,500 made it unnecessary for her to pay any tax on the 1978 and 1979 home transactions.

As early as January 1984, the city of Tampa complained about the condition of the Crescent duplex. Subsequently, a violation order was issued and finally, sometime after September 1985, the duplex was demolished. On June 30, 1988, petitioner sold the Crescent property for $165,000, and she realized $112,363 gain. Petitioner's Form 2119, Sale of Your Home, filed with her 1988 income tax return, reflected that she attempted to exclude the gain by electing section 121 treatment. Respondent disallowed the claimed exclusion, and petitioner sought relief from this Court.

*Discussion*

This case is suitable for summary judgment under Rule 121(b) because there is no genuine issue as to a material fact and the parties' controversy is legal in nature. *Shiosaki v. Commissioner*, 61 T.C. 861, 863 (1974); *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982).

Respondent, as a matter of law, contends that petitioner is not entitled to claim a section 121 exclusion for the 1988 gain from the sale of her private residence if she had claimed sec-

tion 121 exclusion for her 1979 taxable year. Petitioner counters that the earlier transaction should have been reported under section 1034 and no gain would have been reported, thereby obviating the need to claim section 121 treatment in 1979. The essence of petitioner's position is that there was a more effective means (section 1034) to accomplish better tax results, which petitioner now wishes to claim.

Section 121 permits, upon the proper election, the exclusion of $125,000[2] of gain from the sale of a taxpayer's residence. To qualify for section 121 a taxpayer must have attained the age of 55 and used the residence as the principal residence for 3 or more years of the 5 years preceding the sale. Section 121(b)(2) limits the election to a single or one-time election. Accordingly, if petitioner's 1979 election was effective, then she would not be entitled to elect the section 121 exclusion for 1988. Section 121 makes it clear that elections for less than the $125,000 maximum will not result in the difference being available for future residence sales.

Petitioner does not argue that the exclusion can be claimed in 2 different years or for two different homes. Instead, petitioner contends that she was not entitled to use section 121 for 1979 because the use of section 1034 was mandatory.[3] Petitioner reaches this conclusion based upon her reading of portions of the following regulations under sections 121 and 1034:

The provisions of section 1034 are mandatory, so that the taxpayer cannot elect to have gain recognized under circumstances where this section is applicable. * * * [Sec. 1.1034–1(a), Income Tax Regs.]

In applying sections 1033 * * * and 1034 * * *, the amount realized from the sale or exchange of property used as one's principal residence is treated as being the amount determined without regard to section 121, reduced by the amount of gain excluded from gross income pursuant to an election made under section 121(a). Thus, the amount which must be invested in a new residence in order to fully satisfy the nonrecognition provisions of section 1033 or 1034 is reduced by the amount of gain not included in the taxpayer's gross income because of an election made under section 121(a). [Sec. 1.121–5(g), Income Tax Regs.]

---

[2] For the taxable year 1979 the maximum amount excludable was $100,000.

[3] Sec. 1034 allows the rollover of gain on sale of a principal residence without recognition to the extent the proceeds of sale are invested in a new principal residence within the period specified in that section. The gain is deferred by means of adjustments to the basis of the new residence and could be recognized on some subsequent sale of that residence.

Based upon petitioner's interpretation of those sections of the regulations, she contends that the circumstances attending her 1978 and 1979 real estate transactions, which were reflected on her return, would have mandated that she use section 1034 (defer gain) rather than section 121 (exclude gain). Petitioner defines the issue here as whether this Court may correct the 1979 year return (which is not before the Court) and thereby permit the use of section 121 for the 1988 year return (which is the year before the Court). Petitioner reads the mandatory language of section 1034 as prohibiting the use of section 121 unless the gain is both realized and required to be recognized. Accordingly, under petitioner's position a section 121 election is available only for the portion of gain which is not mandatorily deferred under section 1034.

Our reading of section 1.121–5(g), Income Tax Regs., differs from petitioner's. Petitioner's interpretation is based upon the out-of-context phrase "determined without regard to section 121". The subject regulation unambiguously provides that for purposes of determining whether the nonrecognition provisions of section 1033 or 1034 are met, the obligation to reinvest is reduced by the amount of gain which the taxpayer elected to exclude under section 121. The requirements of section 1034 are mandatory with respect to the realization of gain on the sale of a personal residence. Section 121 pertains solely to the exclusion of gain from the sale of one's personal residence and provides for a statutory election to exclude up to $125,000 of that gain. The section 1.1034–1(a), Income Tax Regs., mandatory application of section 1034 prohibits any election to forgo the deferral where there is gain and the statutory provisions for deferral are met. The mandatory aspect of section 1034 does not relate to the section 121 election, which can be separately elected on a one-time basis.

One of the two examples set forth in section 1.121–5(g), Income Tax Regs., states:

Taxpayer B's residence has a basis of $65,000. She sells the residence for $115,000. If she makes an election under section 121(a), her gain of $50,000 is all excluded from gross income, and, accordingly, no portion of the realized gain remains to be deferred under section 1034.

That example makes it clear that the provisions of section 121 may be elected in a section 1034 situation. It should be

noted that with respect to section 1034, a person may continue to put off or defer the reporting of gain on the sale of his residence, and the residence may ultimately pass to heirs without the decedent/taxpayer's incurring income tax on the appreciated value of the realty. Sections 1034 and 121 may also be used in tandem to permit the purchase of a smaller residence in later years without incurring a tax burden on gain from sale of the old residence. Of course, if a person no longer wished to own a residence, after sale of the residence, section 121 could be used, and section 1034 would not be applicable.

Petitioner, acknowledging that 1979 is a closed year, insists that this Court has "not only the right, but the duty, to correct facts in closed years, if this will assist in the correct determination of the tax in the open year under review." In support of her position, petitioner relies heavily upon *Springfield St. Ry. v. United States,* 160 Ct. Cl. 111, 312 F.2d 754 (1963).

Since we have decided that petitioner's election was valid, it is unnecessary to address petitioner's position that we are authorized to go back to 1979 and correct an error. The question remains, however, whether petitioner would be entitled to change her section 121 election for 1979.

Respondent argues that petitioner is precluded from changing her section 121 election on her 1979 return. Respondent contends that petitioner had 3 years from the due date for her 1979 return within which to revoke the section 121 election, and she failed to do so. We agree.

The focus of our inquiry is not an incorrectly reported transaction, but one which was permissible but not necessarily the most advantageous. The more specific question is the effect of the election and whether it may be rescinded or modified. Where taxpayers have a choice between different methods or approaches to reporting income or deductions in a taxable year, on occasion they find that they have chosen the less desirable method. In cases where the statute is silent, numerous courts have addressed this quandary and, as a result, the "doctrine of election" has evolved, under which an election to use a valid method of reporting generally is treated as irrevocable. See *Pacific Natl. Co. v. Welch,* 304 U.S. 191 (1938).

In the present case, however, section 121 specifies the time within which a taxpayer may elect or revoke an election thereunder. Section 121(c) provides that the election may be made or revoked "at any time before the expiration of the period for making a claim for credit or refund of the tax imposed by this chapter for the taxable year in which the sale or exchange occurred". A claim for a credit or refund may be made "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later". Sec. 6511(a). Accordingly, petitioner could have filed an amended return and revoked her section 121 election any time within 3 years of filing her 1979 return. Because the 1979 return was filed during 1980, the period permitted by the statute to revoke the election would have expired during 1983. Because petitioner did not act within that period, she was precluded from revoking the election as of the time she filed her 1988 income tax return.

Petitioner also makes the argument that this situation is analogous to a computational matter and that section 6214(b) permits us to go into a closed year and recompute the tax correctly in order to determine its correct effect upon the year before the Court. Section 6214(b), in pertinent part, provides:

The Tax Court in redetermining a deficiency of income tax for any taxable year * * * shall consider such facts with relation to the taxes for other years * * * as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year * * * has been overpaid or underpaid.

In accord with that language, this Court has computed the correct tax liability in a year which was not before the Court in order to determine whether there was a deficiency in tax for the year before the Court. See *Hill v. Commissioner,* 95 T.C. 437 (1990). Moreover, in *Hill,* it made no difference that the year which was not before the Court was one for which the period for assessment had expired.

Petitioner's reliance upon *Hill* is inapposite because there is no computational error to correct. That is so because petitioner was not precluded from using section 121 for 1979 and was entitled to exclude gain from the sale of her residence. Petitioner also asks us to consider 1979 in order to correct

the unfortuitous choice of electing to exclude about $7,000 of gain for 1979, when she could have excluded over $100,000 of gain for 1988. We are sympathetic and see the misfortune of the choice or election made, but we are without authority or precedent to permit petitioner to change the choice that was made for 1979.

Petitioner emphasizes that the additional tax burden is unfair because it is attributable to her 1979 return preparer. She advises that she was not aware of the section 121 election to exclude the gain and signed the return because of her confidence in her return preparer, who was a C.P.A. As it turned out, however, the election resulted in substantial additional tax, which could have been avoided by a 1988 election.

Petitioner relied upon her return preparer, who was a C.P.A. That reliance, however, does not provide justification for permitting a change of petitioner's election out of time. Reliance upon tax experts is a recognized need, but it does not necessarily relieve a taxpayer from meeting obligations or deadlines. See *United States v. Boyle,* 469 U.S. 241, 249-252 (1985). Here petitioner signed a return without understanding the nature of the election she had made by her subscription. That election, however, was a valid one and one of the choices that could have been made on petitioner's 1979 return. Petitioner's situation evokes sympathy, but it simply represents advice that did not work out well. How would petitioner's 1979 return preparer have known that the house petitioner purchased in 1978 would be sold by petitioner and that it would increase substantially in value, producing a large gain? Petitioner could have retained the house and permitted it to pass to her heirs without incidence of tax on any appreciation and without the use of section 121. Likewise, there was no assurance that the house purchased in 1978 would appreciate in value. These circumstances do not reflect error, but questions of judgment which did not turn out to be beneficial to petitioner. If she had decided to retain the Crescent property, the choice of electing the section 121 exclusion for 1979 might have been a good one.

To reflect the foregoing,

> *An order and decision will be entered granting respondent's motion and denying petitioner's motion for summary judgment.*

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.