T.C. Memo. 2002-311

UNITED STATES TAX COURT

FRED ALLNUTT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6133-00.                    Filed December 26, 2002.

Fred Allnutt, pro se.

<u>Bradley C. Plovan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income tax and additions to tax as follows:

|  | | Additions to tax and penalties | | |
| Year | Deficiency | Sec. 6653(a) | Sec. 6651 | Sec. 6662 |
|------|-----------|--------------|-----------|-----------|
| 1987 | $1,197,033 | $63,143 | $269,331.98 | -- |
| 1988 | 274,146 | 16,379 | 61,682.50 | -- |
| 1989 | 10,253 | -- | 2,307.20 | $2,050.60 |
| 1990 | 112,208 | -- | 25,247.25 | 22,441.60 |
| 1992 | 82,632 | -- | 18,592.68 | 26,526.40 |
| 1993 | 1,744 | -- | -- | 354.80 |
| 1994 | 17,581 | -- | -- | 3,516.20 |
| 1995 | 19,992 | -- | -- | 3,998.40 |
| 1996 | 16,702 | -- | -- | 3,340.40 |
| 1997 | 20,177 | -- | -- | 4,035.40 |

This case is before the Court to decide the following issues:

1.  Whether respondent timely issued the notice of deficiency to petitioner for tax years 1987-90 and 1992-95. Resolution of that issue depends on whether petitioner filed his 1987-90 and 1992-95 Federal income tax returns when he hand delivered those returns to respondent's offices at 31 Hopkins Plaza, Baltimore, Maryland, on February 21, 1997. We hold that his delivery of the returns on that date did not constitute filing and that the notice of deficiency was timely issued.

2.  Whether petitioner is barred by res judicata from carrying forward net operating losses from 1981-86 to the years in issue. We hold that he is.

3.  Whether to grant petitioner's motion to dismiss this case and to impose sanctions on respondent under Rule 104(c). We will deny petitioner's motion.

Further trial is necessary to resolve the remaining issues in this case. Unless otherwise specified, section references are to the Internal Revenue Code in effect for the applicable years, and Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. <u>Petitioner</u>

Petitioner resided in Maryland when he filed the petition. An accounting firm prepared petitioner's tax returns for 1981-95.

B. <u>Petitioner's Delivery of Tax Returns to Respondent's Offices</u>

On February 20, 1997, petitioner signed income tax returns for 1981-95 (original returns with original signatures). After he signed those returns, he photocopied them and signed them in blue ink over his photocopied signatures (photocopied returns with original signatures).

Petitioner prepared a letter of transmittal addressed both to Paul M. Harrington (Harrington), Baltimore's District Director, and Elizabeth S. Henn (Henn), in the Baltimore office of District Counsel. Petitioner's letter stated:

> Dear Mr. Harrington and Mrs. Henn,
>
> I am delivering to District Counsel with this letter original filings of 1040 tax returns for the year 1981 and for each year thereafter up through and including 1995. My attorney, Mr. Jeffrey Dickstein,

has spoken with Mr. Gregory S. Hrebiniak, Department of Justice, who instructed him to have me file said returns with District Counsel.

Petitioner delivered the original returns with original signatures for 1981-95, accompanied by the letter of transmittal, to Henn's secretary at the Baltimore, Maryland, Office of District Counsel, 200 St. Paul Place, Suite 2602, at about 11:25 a.m. on February 21, 1997. At that time, petitioner intended those to be his filed returns, and he believed that he had filed those returns by delivering them to the office of District Counsel. Henn's secretary date stamped and signed a copy of the transmittal letter.

Petitioner then went to respondent's offices at 31 Hopkins Plaza, Baltimore, which included the office of the Baltimore District Director. Petitioner entered the building at about 11:45 a.m. and asked a security guard for directions to Harrington's office. The guard told petitioner that Harrington was at lunch and directed petitioner to a second person. Petitioner asked that person for directions to Harrington's office. That second person told petitioner that Harrington was at lunch and that he (the second person) could hold the package and give it to Harrington when Harrington returned from lunch. Petitioner asked the second person if he had authority to accept documents on Harrington's behalf, and the second person said that he did. Petitioner wrote "Attn: Paul Harrington" on the

envelope containing the letter of transmittal and the photocopied returns with original signatures for 1981-95. Petitioner closed the flap on the envelope that contained those returns and secured the metal clasp. Petitioner did not show or identify the contents of the envelope to the second person. Petitioner gave the envelope to the second person.

C.  Respondent's Processing of the Returns

1.  Respondent's Procedures

In 1997, deliveries for Harrington were usually processed by Susan Arczynski (Arczynski), the assistant district director's secretary. Her usual practice was to stamp the time and date when she received an item and to use the director's routing stamp on the item if there was room to do so. If there was no room for the director's routing stamp, Arczynski's usual practice was to staple to the item a small routing slip containing the same information as the routing stamp. She always used a routing slip instead of the stamp if the item was a tax return.

Arczynski was at work on February 21, 1997. At trial, she could not remember whether she had received Allnutt's package of returns for the years 1981-95.

Personnel in the District Director's office usually directed persons who asked where to file tax returns to the walk-in area of the taxpayer services office on the first floor.

2.    Processing of the Returns Delivered to District Counsel

Respondent's District Counsel's office did not place any identifying marks or stamps on the returns for the years in issue that petitioner delivered to Henn's secretary on February 21, 1997 (i.e., the original returns with original signatures). Those returns were forwarded to the Baltimore Special Procedures Office of the District Director, which stamped them received on March 10, 1997. Someone wrote on the top of the first page of each of those returns "Copy of Return Secured [or Received] by Examination. 5/1/97".

3.    Processing of the Returns Delivered to 31 Hopkins Plaza

Respondent did not place a date received stamp on or make any other record showing when respondent received the photocopied returns with original signatures for the years in issue.

An unidentified person (or persons) in respondent's Philadelphia Service Center stamped the following on the front page of each photocopied return with original signature for the years in issue:  (1) "IRS Received from District 052197"; (2) "Postmark 050997" and "Received 051497; and (3) "Delinquent Original Cleared for Processing by 285" on June 16, 1997, and "Resort Received" on June 27, 1997.  Someone from an unidentified IRS office stamped on the bottom left corner of the front page of each photocopied return with original signature for the years in issue "POS sorted for statute review, 5-14-97".  However, that

stamped information was marked through in an attempt to make it unreadable. On a date not specified in the record, an unidentified person acting for respondent added a document locator number to the upper right corner of the first page of each photocopied return with original signature for the years in issue.

Respondent mailed the notice of deficiency to petitioner for tax years 1987-90 and 1992-97 on March 6, 2000.

D. Allnutt v. Commissioner

Petitioner previously filed a petition in this Court seeking our review of the Commissioner's determination of deficiencies in petitioner's income tax for 1981-86. Allnutt v. Commissioner, T.C. Memo. 1991-6 (Allnutt I), affd. without published opinion 956 F.2d 1162 (4th Cir. 1992), cert. denied 506 U.S. 816 (1992). In Allnutt I, we granted the Commissioner's motion to dismiss the case for failure to state a claim because petitioner made only frivolous allegations. We also sustained the Commissioner's determination relating to deficiencies in petitioner's income tax for 1981-86 and decided that petitioner had the following amounts of taxable income:

| Year | Amount |
|------|--------|
| 1981 | $433,059 |
| 1982 | 409,575 |
| 1983 | 386,090 |
| 1984 | 342,223 |
| 1985 | 298,355 |
| 1986 | 1,913,176 |

Id.  In Allnutt I, we also (1) sustained additions to tax under section 6654 as determined by the Commissioner; (2) granted the Commissioner's motion for summary judgment as to fraud under section 6653(b)(1); and (3) granted the Commissioner's motion for imposition of a penalty under section 6673.  Id.  Our decision in Allnutt I is final.

## OPINION

### A.   Whether Respondent Timely Issued the Notice of Deficiency to Petitioner for Tax Years 1987-90 and 1992-95

#### 1.   Contentions of the Parties

We first decide whether respondent timely issued the notice of deficiency for petitioner's tax years 1987-90 and 1992-95. Generally, the Commissioner must assess tax within 3 years after the due date of a timely filed return or the filing of the return.  Sec. 6501(a).  The notice of deficiency was sent on March 6, 2000.  If petitioner filed returns for those years before March 6, 1997, the assessment of deficiencies for 1987-90 and 1992-95 is barred by the statute of limitations.[1]  Id.  If petitioner's returns were not filed before March 6, 1997, the notice of deficiency was timely issued.

---

[1]  Respondent does not contend that petitioner omitted more than 25 percent of his gross income, see sec. 6501(e), that he consented to an extension of the time to assess tax, or that there are any other circumstances that would lengthen the usual 3-year period for assessment of tax.

Petitioner contends that (1) on February 21, 1997, he delivered the photocopied returns with original signatures for the years in issue to the Baltimore District Director's office, and (2) his delivery of that set of returns constitutes filing of those returns.[2]  Respondent contends that petitioner's returns for the years in issue were filed on March 10, 1997, when the Baltimore District's Special Procedures Office stamped them received.

2.  <u>Whether Petitioner Delivered the Photocopied Returns With Original Signatures for the Years in Issue to 31 Hopkins Plaza on February 21, 1997</u>

We next decide whether, as petitioner contends, he delivered to 31 Hopkins Plaza in Baltimore on February 21, 1997, the photocopied returns with original signatures for the years in issue.

The cover letter petitioner delivered on February 21, 1997, to the office of District Counsel shows that he intended to file his original returns with the office of District Counsel, and intended to deliver a copy of those returns to the District Director.

Petitioner testified that, on February 21, 1997, he delivered an envelope containing his photocopied returns with original signatures for 1981-95 to an individual in the office of

_____

[2]  Petitioner concedes that delivery of his original returns with original signatures to respondent's office of District Counsel does not constitute filing of those returns.

the District Director who told petitioner that he had the authority to accept deliveries for the District Director.

Respondent contends that petitioner's testimony is not credible. We disagree. We decide whether a witness is credible on the basis of objective facts, the reasonableness of the testimony, and the demeanor of the witness. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Pinder v. United States, 330 F.2d 119, 124-125 (5th Cir. 1964); Concord Consumers Hous. Coop. v. Commissioner, 89 T.C. 105, 124 n.21 (1987). Petitioner consistently and repeatedly described the steps he took to deliver the photocopied returns with original signatures.

A Philadelphia Service Center stamp "IRS Received from District 052197" appears on the front page of each photocopied return with original signature for the years in issue. Petitioner contends that the stamp shows that the Baltimore District Director received the photocopied returns for the years in issue and sent them to the Philadelphia Service Center, which received the returns on May 21, 1997. Respondent offered no explanation of the stamp, and no argument to the contrary. The stamp tends to support petitioner's claim that he delivered the photocopied returns with original signatures for the years in issue to the Baltimore District Director because it apparently

shows that the Philadelphia Service Center received those returns from a district office.

Arczynski, the secretary in Harrington's office who processed deliveries to Harrington on February 21, 1997, was respondent's only witness. She described routine procedures at her office but had no knowledge of the facts of this case.

We find that petitioner hand delivered the photocopied returns with original signatures for the years in issue to someone in the building containing the District Director's offices on February 21, 1997.

3. <u>Whether Delivery of the Returns for the Years in Issue to 31 Hopkins Plaza Constituted Filing of Those Returns</u>

An individual taxpayer must file his or her return in the internal revenue district in which the legal residence or principal place of business of the individual is located, or at the service center serving that district, as the Secretary may by regulations designate. Sec. 6091(b)(1)(A). The applicable regulations provide:

§1.6091-2.  Place for filing income tax returns.--

\*     \*     \*     \*     \*     \*     \*

(a) Individuals, estates and trusts.--(1) Except as provided in paragraph (c) of this section, income tax returns of individuals, estates, and trusts shall be filed with the district director for the internal revenue district in which is located the legal residence or principal place of business of the person required to make the return, or, if such person has no legal residence or principal place of business in any internal revenue district, with the District Director at Baltimore, Md. 21202.

\*     \*     \*     \*     \*     \*     \*

(c) Returns filed with service centers.-- Notwithstanding paragraphs (a) and (b) of this section, whenever instructions applicable to income tax returns provide that the returns be filed with a service center, the returns must so be filed in accordance with the instructions.

(d) Hand-carried returns.--Notwithstanding paragraphs (1) and (2) of section 6091(b) and paragraph (c) of this section--

(1) Persons other than corporations.--Returns of persons other than corporations which are filed by hand carrying shall be filed with the district director (or with any person assigned the administrative supervision of an area, zone or local office constituting a permanent post of duty within the internal revenue district of such director) as provided in paragraph (a) of this section.

Thirty-one Hopkins Plaza is a permanent post of duty for the Baltimore District Director.

To be a return for statute of limitations purposes, the document "must honestly and reasonably be intended as such" by the taxpayer.  <u>Florsheim Bros. Drygoods Co. v. United States</u>, 280

U.S. 453, 462 (1930); <u>Friedmann v. Commissioner</u>, T.C. Memo. 2001-207 (documents not treated as filed returns where nothing in the record shows that the taxpayer intended his delivery of documents to an agent to constitute filing of returns).  A taxpayer may not, by his or her own ambiguous conduct, even if unintentional, secure the benefit of the limitations period.  See <u>Lucas v. Pilliod Lumber Co.</u>, 281 U.S. 245, 249 (1930).  Petitioner did not intend the returns that he delivered to the District Director to be his filed returns.  Petitioner did not treat the photocopied returns with original signatures enclosed in the envelope that he gave to an unidentified employee at 31 Hopkins Plaza as returns he intended to file.  He did not indicate that the envelope contained his tax returns, he did not request a receipt, and he did not ask that a copy of the cover letter be date-stamped, as he had done at District Counsel's offices.  Petitioner's February 21, 1997, transmittal letter said he intended the original returns with original signatures, which he delivered to respondent's office of District Counsel, to be his filed returns.  Thus, petitioner did not file his returns for 1987-90 or 1992-95 by hand delivering photocopies of his original returns with original signatures to 31 Hopkins Plaza on February 21, 1997.  Petitioner's returns were filed on March 10, 1997, when the Baltimore Special Procedures Office of the District Director

stamped them received.  Thus, respondent timely issued the notice of deficiency to petitioner for tax years 1987-90 and 1992-95.[3]

B.  Whether Petitioner May Carry Forward Net Operating Losses From 1981-86 to the Years in Issue

1.  Contentions of the Parties

Petitioner contends that his deductions for 1981-86 exceeded his income and thus generated net operating losses, and that he may carry forward those losses to the years in issue.

Respondent contends that res judicata bars petitioner from contending that his deductions exceeded his income in 1981-86 because we decided his tax liability for 1981-86 in a prior case. Petitioner contends that res judicata does not apply because, according to petitioner, section 6214(b) and several cases he cites allow him to calculate the proper amount of tax for closed years.  We agree with respondent for reasons stated next.

2.  Effect of Allnutt I on Petitioner's Attempt To Litigate His Deductions for 1981-86 in This Case

Under the doctrine of res judicata, when a court of competent jurisdiction has entered a judgment on the merits of a cause of action, the parties to the suit and their privies are

---

[3]  In support of respondent's contention that the notice of deficiency was timely issued, respondent moved to reopen the record after the trial to offer into evidence (1) returns that respondent contends are petitioner's photocopied returns with original signatures for 1981-86, and (2) the envelope that respondent contends petitioner used to mail those returns to respondent's Philadelphia Service Center.  In light of our conclusion that respondent timely issued the notice of deficiency, we will deny respondent's motion as moot.

bound by every matter that was or could have been offered and received to sustain or defeat the claim. Commissioner v. Sunnen, 333 U.S. 591, 597 (1948); Calcutt v. Commissioner, 91 T.C. 14, 21 (1988). Res judicata applies to tax cases. Commissioner v. Sunnen, supra; Calcutt v. Commissioner, supra. In Commissioner v. Sunnen, supra at 598, the Supreme Court said:

> Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. * * *

Res judicata applies to all matters which were or might have been offered in the prior case. Nevada v. United States, 463 U.S. 110, 129-130 (1983); Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); Commissioner v. Sunnen, supra at 597. Issues which affect the computation of tax liability that were or could have been litigated in a prior case are part of the cause of action which are barred if res judicata applies. Boyd v. Commissioner, 101 T.C. 365, 371 (1993); Trost v. Commissioner, 95 T.C. 560, 566 (1990).

Three requirements must be satisfied for res judicata to preclude relitigation of a taxpayer's tax liability. Two of these requirements are that: (1) The parties in the second case must be the same as or in privity with the parties in the first case, and (2) the first case must have resulted in a final

judgment on the merits by a court of competent jurisdiction. Commissioner v. Sunnen, supra; see Nevada v. United States, supra; Federated Dept. Stores, Inc. v. Moitie, supra. The first requirement is met here because the parties are identical in both cases. The second requirement is met because Allnutt I resulted in a final judgment on the merits.[4] This is so because a decision based on a party's failure to state a claim on which relief may be granted is a decision on the merits with full res judicata effect. State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 518 n.8 (10th Cir. 1994); Winslow v. Walters, 815 F.2d 1114, 1116 (7th Cir. 1987).

The third requirement is that the cause of action, i.e., the tax liability, in the second case must be the same as in the prior case. Petitioner contends that the third requirement is not met because net operating loss carryforwards at issue in the instant case were not at issue in Allnutt I. Petitioner's argument is an attempt to sidestep well-settled principles of res judicata. To prevail on a net operating loss carryforward claim, petitioner must show that (1) he had a loss in a prior year; i.e., that his deductions, losses, or credits exceeded his taxable income in a prior year; and (2) the prior year's loss may be applied against income in a later year. Sec. 172. Obviously,

---

[4] Petitioner does not dispute that the first and second requirements are met. Petitioner is attempting in substance to reopen closed years.

the second of these points was not decided in Allnutt I.
However, the first point was decided:  we decided that he had
taxable income in the 1981-86 years.  Thus, he did not have
losses in those years.  That decision is now final.  Res judicata
bars petitioner from relitigating that issue here.  We conclude
that the third requirement is met, and that petitioner is barred
by res judicata from arguing that he has losses in 1981-86 which
he can carry forward to the years in issue.

3.  Section 6214(b)

Petitioner contends that section 6214(b)[5] permits him to
deduct net operating losses for 1981-86 in this case because it
requires us to consider facts from other years to correctly
redetermine a deficiency.  We disagree.

Section 6214(b) provides that we shall consider facts from
other years as may be necessary to redetermine correctly
deficiencies in the years before us.  However, petitioner's 1980-
86 tax years were at issue in Allnutt I, and res judicata bars

[5]  Sec. 6214(b) provides:

> SEC. 6214(b).  Jurisdiction Over Other Years and
> Quarters.--The Tax Court in redetermining a deficiency
> of income tax for any taxable year or of gift tax for
> any calendar year or calendar quarter shall consider
> such facts with relation to the taxes for other years
> or calendar quarters as may be necessary correctly to
> redetermine the amount of such deficiency, but in so
> doing shall have no jurisdiction to determine whether
> or not the tax for any other year or calendar quarter
> has been overpaid or underpaid.

reconsideration of issues that could have been litigated in that case.  Thus, we reject petitioner's contention that section 6214(b) overrides res judicata.

    4.    <u>Barenholtz v. United States, Springfield St. Ry. Co. v. United States, Robarts v. Commissioner, Hamilton Indus., Inc. v. Commissioner, and Budd Co. v. Commissioner</u>

Petitioner contends that, on the basis of the holdings in <u>Barenholtz v. United States</u>, 784 F.2d 375, 380-381 (Fed. Cir. 1986); <u>Springfield St. Ry. Co. v. United States</u>, 160 Ct. Cl. 111, 312 F.2d 754, 757-759 (1963); <u>Robarts v. Commissioner</u>, 103 T.C. 72 (1994), affd. without published opinion 56 F.3d 1390 (11th Cir. 1995); <u>Hamilton Indus., Inc. v. Commissioner</u>, 97 T.C. 120, 127-128 (1991); and <u>Budd Co. v. Commissioner</u>, 33 T.C. 813 (1960), he is not precluded by res judicata from disputing whether he may deduct net operating losses from 1981-86 in the years in issue because those cases allowed consideration of facts from closed tax years.  We disagree.  The courts in those cases allowed the parties to consider facts from years closed by the statute of limitations in calculating tax liabilities for the years before the court.  However, those cases do not control here because they did not involve years that were litigated and barred by res judicata.

5.  Conclusion

We conclude that res judicata bars petitioner from disputing the amounts of his deductions for 1981-86.  Thus, petitioner may not deduct net operating losses carried forward from 1981-86 to the years in issue.

C.  Whether To Grant Petitioner's Motion To Dismiss and Impose Sanctions

After trial and briefing, petitioner moved to dismiss this case and to impose sanctions on respondent under Rule 104(c).  Petitioner contends that he sought discovery of Forms 895, Notice of Statute Expiration, for tax years 1987-98 and that respondent failed to give him those forms until December 28, 2001.  Petitioner contends that the Forms 895 "indisputably prove" that he filed his returns in February 1997.  Petitioner contends that we should have a hearing if we deem it necessary.  A hearing is not necessary.

Petitioner points out that the Forms 895 include an entry which states:  "Statute Date:  022000".  Petitioner contends (and respondent does not deny) that respondent uses the Forms 895 to track the date that the period of limitations expires, that "statute date" refers to the statute of limitations, and that "022000" means February 20, 2000.  Petitioner points out that he signed and dated his returns on February 20, 1997, 3 years before February 20, 2000.  Thus, petitioner contends that the Forms 895 establish that he filed the returns for the years in issue on

February 21, 1997. We disagree. A Form 895 does not establish when a taxpayer's returns were filed; filing of a return is established by facts showing proper delivery or mailing of a return with the intent to file it as a return. See sec. 6091(b)(1)(A); Lucas v. Pilliod Lumber Co., 281 U.S. at 249; Florsheim Bros. Drygoods Co. v. United States, 280 U.S. at 462; sec. 1.6091-2(d)(1), Income Tax Regs.

Petitioner filed a motion asking that we dismiss this case and impose sanctions on respondent under Rule 104(c). Petitioner contends that respondent withheld the Forms 895 in bad faith and points out that we have considerable discretion to impose sanctions, citing Fox v. Commissioner, 718 F.2d 251 (7th Cir. 1983).

Respondent contends that the Forms 895 were provided to petitioner several months before trial. As the moving party, petitioner bears the burden of proof under the normal evidentiary rule imposing proof obligations on the moving party. United States v. Rexach, 482 F.2d 10, 16 (1st Cir. 1973); see Pietanza v. Commissioner, 92 T.C. 729, 736 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991); S. Cal. Loan Association v. Commissioner, 4 B.T.A. 223 (1926). Petitioner has not met the burden of proving that respondent withheld the Forms 895 or that

respondent violated any order.[6]  We will deny petitioner's motion to dismiss his case and to seek sanctions under Rule 104(c).

Accordingly,

An appropriate order

will be issued.

---

[6]  Petitioner relies on <u>United States v. OMNI Intl. Corp.</u>, 634 F. Supp. 1414 (D. Md. 1986), and other cases involving prosecutorial misconduct.  That reliance is misplaced because those cases involved sanctions for prosecutorial conduct in criminal prosecutions.