T.C. Memo. 2004-239

UNITED STATES TAX COURT

FRED ALLNUTT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6133-00.                    Filed October 18, 2004.

Fred Allnutt, pro se.

<u>Bradley C. Plovan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income tax and additions to tax and
penalties as follows:

| Year | Deficiency | Additions to tax and penalties | | |
|------|-----------|-----------|-----------|-----------|
| | | Sec. 6653(a) | Sec. 6651(a)(1) | Sec. 6662 |
| 1987 | $1,197,033 | $63,143.55 | $269,331.98 | -- |
| 1988 | 274,146 | 16,379.00 | 61,682.50 | -- |
| 1989 | 10,253 | -- | 2,307.20 | $2,050.60 |
| 1990 | 112,208 | -- | 25,247.25 | 22,441.60 |
| 1992 | 82,632 | -- | 18,592.68 | 16,526.40 |
| 1993 | 1,774 | -- | -- | 354.80 |
| 1994 | 17,581 | -- | -- | 3,516.20 |
| 1995 | 19,992 | -- | -- | 3,998.40 |
| 1996 | 16,702 | -- | -- | 3,340.40 |
| 1997 | 20,177 | -- | -- | 4,035.40 |

After concessions, the issues remaining for decision are:

1.  Whether petitioner's bases in equipment he sold in 1987-90 exceeded the amounts conceded by respondent (the basis issue). We hold that they did not.

2.  Whether petitioner is liable for:  (a) Additions to tax for negligence under section 6653(a) for 1987-88; (b) the accuracy-related penalty under section 6662(a) for 1989-90 and 1992-97; and (c) additions to tax for failure to timely file returns under section 6651(a) for 1987-90 and 1992.  We hold that he is.

3.  Whether petitioner complied with requirements for issuing subpoenas to several prospective witnesses.  We hold that he did not, and thus the subpoenas were not enforceable.

4.  Whether the Court properly denied petitioner's motions to recuse the trial Judge and for a hearing on whether certain conduct of respondent's trial counsel was fraudulent.  We hold that those motions were properly denied.

Unless otherwise specified, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner resided in Maryland when he filed the petition.

A.  Petitioner's Business

Petitioner was the sole proprietor of JFC Excavating in 1987-90.  Petitioner bought the following excavating equipment:

| Purchase Date | Description | Purchase Price |
|---|---|---|
| Oct. 14, 1983 | Terex TS14B, Ser. No. 69699 | $84,500.00 |
| Nov. 26, 1984 | Caterpillar 953LGP, Ser. No. 20Z355 | 88,500.00 |
| Oct. 16, 1986 | Case 1835, Ser. No. 17168653 | 14,561.65 |

Petitioner sold these three pieces of equipment (the three pieces of equipment) and 58 other pieces of excavating equipment in 1987-90.

B.  Petitioner's Tax Years 1981-86

Petitioner's tax years 1981-86 were at issue in Allnutt v. Commissioner, T.C. Memo. 1991-6 (Allnutt I), affd. without published opinion 956 F.2d 1162 (4th Cir. 1992).  We dismissed Allnutt I to the extent it related to issues on which petitioner had the burden of proof because petitioner failed to state a

claim upon which relief could be granted.  Id.  We also (1) deemed admitted undenied allegations of fact and granted the Commissioner's motion for summary judgment relating to petitioner's liability for the fraud penalty; (2) held that petitioner had taxable income of $433,059 for 1981, $409,575 for 1982, $386,090 for 1983, $342,223 for 1984, $298,355 for 1985, and $1,913,176 for 1986; (3) sustained additions to tax under section 6654 for failure to pay estimated tax; and (4) imposed a penalty under section 6673 for instituting the proceeding primarily for delay and for maintaining frivolous positions.  Id.

Petitioner attempted to relitigate his 1981-86 tax liability in a bankruptcy case.  Allnut v. Friedman,[1] Bankruptcy No. 92-5-7401-JS (D. Md., Jan. 20, 1995).  In Allnut v. Friedman, supra, the District Court said that petitioner's liability for tax years 1981-86 had been fully adjudicated before he filed the bankruptcy petition and held that he was barred by res judicata under 11 U.S.C. section 505(a)(2)(A)[2] from relitigating his 1981-86 tax

_____

[1] The caption of that case spells petitioner's name with only one "t".

[2] 11 U.S.C. sec. 505(a)(2)(A) (2000) provides:

505. Determination of tax liability

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not

(continued...)

liability. The opinion of the District Court in <u>Allnut v. Friedman</u>, <u>supra</u>, was filed more than 2 years before petitioner filed his returns for the years in issue.

C. <u>Filing in 1997 of Petitioner's Tax Returns for 1987-90 and 1992-97</u>

Safoet A. Ashai, a certified public accountant (C.P.A.), prepared petitioner's Federal income tax returns for the years in issue. Petitioner filed his returns for 1987-90 and 1992-95 on March 10, 1997. His filing status was married filing separately for the years in issue. Petitioner reported substantial gross receipts from his excavating business for each year in issue. In his returns for the years in issue, petitioner reported gains from 49 items of property as follows:

| Year | Number of Items | Total Purchase Price | Total Adjusted Basis | Total Sale Price | Total Gain |
|---|---|---|---|---|---|
| 1987 | 13 | $529,000 | $145,950 | $293,400 | $147,450 |
| 1988 | 7 | 474,000 | 84,420 | 272,000 | 187,580 |
| 1989 | 5 | 288,000 | 39,060 | 109,500 | 70,440 |
| 1990 | 24 | 1,896,000 | 511,519 | 1,014,000 | 502,481 |

---

[2](...continued)
contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine--

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

In the notice of deficiency, respondent determined that petitioner's adjusted basis in each asset was zero. Petitioner also reported losses totaling $297,264.40 from 12 items of property sold in 1987-90. Respondent made no determination relating to the property petitioner reported selling at a loss.

D. Procedural History

1. Trial on October 24, 2001

In Allnutt v. Commissioner, T.C. Memo. 2002-311 (Allnutt II), a prior opinion filed in the instant case, we held that (1) the notice of deficiency for tax years 1987-90 and 1992-95 was timely issued; and (2) because of our decision in Allnutt I, petitioner was barred by res judicata from arguing that he had losses in 1981-86 which he could carry forward to the years in issue (1987-90 and 1992-97).

The issues decided in Allnutt II were tried on October 24, 2001. Petitioner prepared 10 subpoenas for Internal Revenue Service (IRS) employees to appear as witnesses at the Court's trial session beginning on October 22, 2001. Petitioner did not tender witness fees or mileage to the summoned witnesses. Also, the return of service for those subpoenas did not contain the date and time of service and did not contain a sworn statement signed and dated by the person making service that he or she had delivered the subpoena to the summoned witness and tendered fees

and mileage pursuant to Rule 148. The Court granted respondent's motions to quash those subpoenas.

2. Trial on July 15, 2003

On May 13, 2003, we set the remaining issues (basis and additions to tax) for trial for July 15, 2003. A standing pretrial order was served on petitioner on May 13, 2003, which required the parties to identify in writing and exchange documents to be used at trial at least 15 days before trial.

Petitioner did not exchange any documents 15 days or more before July 15, 2003. On July 10, 2003, petitioner faxed to respondent (1) a list of equipment entitled "Recapitulation of Equipment Purchased and Sold by Fred Allnutt", and (2) 20 invoices and purchase orders for equipment petitioner bought in 1981-92.

Petitioner prepared subpoenas for respondent's revenue agent who audited petitioner's returns for the years in issue and his supervisor. Each of these subpoenas was stamped received on June 27, 2003, by respondent's disclosure office[3] in Baltimore. The returns of service for these subpoenas did not contain the date or time of service and did not contain a sworn statement signed

---

[3] The Commissioner's disclosure office is generally responsible for processing taxpayers' document requests, such as Freedom of Information Act (FOIA) requests. Sec. 601.702(c), (g)(7), Statement of Procedural Rules; see, e.g., Judicial Watch, Inc. v. Rossotti, 91 AFTR 2d 2003-463, 2003-1 USTC par. 50,201 (D. Md. 2002).

and dated by the person making service verifying that he or she had delivered the subpoena to the summoned witness and had tendered fees and mileage pursuant to Rule 148. The Court granted respondent's motions to quash the subpoenas.

At trial on July 15, 2003, petitioner stated that he had 100 boxes of records to support the bases he claimed for equipment that he sold in the years in issue, but that he did not have them with him. Trial was continued to give petitioner more time to present his records to respondent.

### 3. Trial on January 5, 2004

On July 28, 2003, petitioner faxed to respondent a list entitled "Fred W. Allnutt, Equipment" that petitioner had not previously given to respondent.

On November 5, 2003, further trial was set for January 5, 2004, to give petitioner another opportunity to offer evidence relating to the basis issue. Also on November 5, 2003, the Court ordered petitioner to provide to respondent, not later than December 22, 2003, all documents that he wanted to use at trial to substantiate his claimed bases, organized by asset. Petitioner failed to provide any additional documents to respondent by December 22, 2003.

On December 17, 2003, petitioner again prepared subpoenas for respondent's revenue agent who audited petitioner's returns for the years in issue and his supervisor. Respondent's

disclosure office in Baltimore received each of those subpoenas on December 30, 2003.  Petitioner did not personally serve the subpoenas or tender witness fees or mileage.  Respondent filed motions to quash the subpoenas on the same grounds as respondent's earlier motions to quash; e.g., that petitioner did not comply with the procedural requirements for issuing subpoenas.  At trial on January 5, 2004, we granted respondent's motion to quash the subpoena issued to respondent's revenue agent.  Respondent's motion to quash as to the agent's supervisor was moot because petitioner did not call her to testify.

At trial, petitioner offered into evidence the two lists and the 20 invoices and purchase orders (and accompanying cover letters for those documents) that he had faxed to respondent on July 10 and 28, 2003.  Respondent objected to the admission of the lists into evidence as hearsay.  Respondent did not object to their being admitted as a summary of petitioner's testimony.  The two lists were admitted into evidence as a summary of petitioner's testimony.

Petitioner also offered into evidence two typewritten summaries showing descriptions, serial numbers, purchase dates and prices, and sale dates and prices for items of equipment purchased by petitioner on or after February 11, 1981, neither of which petitioner had provided to respondent's counsel before

December 22, 2003.  Those two documents were not admitted into evidence.

D.   Petitioner's Motions To Disqualify the Trial Judge and for a Hearing on Whether Conduct of Respondent's Counsel Was Fraudulent

Petitioner filed three motions to disqualify the trial Judge, all of which we denied.

About 3 weeks after petitioner filed his posttrial answering brief, petitioner filed two motions for a hearing in which petitioner alleged that respondent's counsel had committed fraud on the Court by, according to petitioner, failing to timely provide to petitioner Forms 895, Notice of Statute Expiration. We denied petitioner's motions.

OPINION

A.   Whether Petitioner Had Higher Bases in Equipment Sold in 1987-90 Than Conceded by Respondent

1.   Burden of Proof

Petitioner contends that respondent bears the burden of proving that the bases in equipment sold in 1987-90 that petitioner reported on his returns for those years are incorrect. We disagree.

Under section 7491(a), the burden of proof with respect to a factual issue relevant to a taxpayer's liability for tax shifts from the taxpayer to the Commissioner for cases in which the examination began after July 22, 1998, if, inter alia, the taxpayer has:  (a) Complied with substantiation requirements

under the Internal Revenue Code, sec. 7491(a)(2)(A); (b)
maintained all records required by the Internal Revenue Code,
sec. 7491(a)(2)(B); and (c) cooperated with reasonable requests
by the Secretary for information, documents, and meetings, id.  A
taxpayer bears the burden of proving that he or she has met the
requirements of section 7491(a).  See H. Conf. Rept. 105-599, at
239 (1998), 1998-3 C.B. 747, 993; S. Rept. 105-174, at 45 (1998),
1998-3 C.B. 537, 581.

The record does not show when the examination began.  Even
if the examination had begun after July 22, 1998, the burden of
proof regarding petitioner's basis in the equipment would not
shift to respondent.  Petitioner did not show that he kept
records of his bases in equipment or that he cooperated with
respondent's reasonable requests for information and documents.
See sec. 7491(a)(2)(B).  Thus, respondent's determination is
presumed to be correct, and petitioner bears the burden of proof.
See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

2.    Petitioner's Bases in Equipment Sold in 1987-90

Petitioner contends that the record shows that he had higher
bases in equipment sold in 1987-90 than conceded by respondent.[4]

---

[4] Respondent conceded that petitioner established his
original costs for three pieces of equipment:  The Terex TS14B,
the Caterpillar 953LGP, and the Case 1835.

### a. Petitioner's Tax Returns

Petitioner contends that his tax returns establish that his bases for the equipment he sold in 1987-90 are as reported on those returns.[5]  We disagree.  Tax returns do not establish the truth of facts reported in them.  Lawinger v. Commissioner, 103 T.C. 428, 438 (1994); Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974).

Petitioner argues that, because respondent accepted the bases he reported on those returns for some equipment, respondent must also accept the bases he reported for all of the equipment.  We disagree.  Respondent's acceptance of some items reported on a return does not bar respondent from challenging other items reported on the return.  Showell v. Commissioner, 23 T.C. 495, 499 (1954), remanded on other grounds 238 F.2d 148 (9th Cir. 1956); Estate of Marcus v. Commissioner, T.C. Memo. 1955-298.

### b. Petitioner's Lists

Respondent objected on hearsay grounds to the admission of petitioner's lists of equipment sold.  Petitioner failed to show

---

[5]  At trial on January 5, 2004, petitioner testified:

> * * * [His] tax returns as filed and sworn to under oath * * * [are correct].  There's been no testimony in this courtroom to show that those tax returns are incorrect.  There's only been unsupported allegations and insinuations by respondent's attorney, but no sworn testimony that they're incorrect.  They are correct, and they are sworn to.  They have not been rebutted.

that any exception to the hearsay rule applies, and it does not appear that any exception applies.  Rule 803(6) of the Federal Rules of Evidence provides an exception to the hearsay rule for records that are kept in the course of a regularly conducted activity and made at or near the time of the event by a person with knowledge.  Petitioner testified that he was not familiar with the records because his son maintained them.  Petitioner's son did not testify.  Petitioner has not met the requirements of rule 803(6) of the Federal Rules of Evidence because petitioner is not a qualified custodian of those records.

Respondent did not object to the admission of petitioner's lists of equipment sold as a summary of petitioner's testimony, and the Court admitted them for that limited purpose.  See, e.g., Randall v. Commissioner, 56 T.C. 869, 874 n.4 (1971) (list treated as a summary of testimony that the taxpayer would have given); Fast v. Commissioner, T.C. Memo. 1998-272 (list of expenses treated as summary of taxpayer's testimony); Hall v. Commissioner, T.C. Memo. 1996-71 (document admitted solely as a summary of taxpayer's testimony and given no evidentiary weight).

The information in the lists (except for the invoices and purchase orders relating to the three pieces of equipment described above at paragraph 1 of the findings of fact) is wholly uncorroborated.  A taxpayer must keep adequate records from which to calculate his or her correct tax liability.  Sec. 6001; sec.

1.6001-1(a), Income Tax Regs. Despite our continuance of the case on July 15, 2003, to permit petitioner to provide documents, and our orders to petitioner to produce documents, petitioner did not provide to respondent any documents relating to those lists (except for those related to the three pieces of equipment described above at paragraph 1 of the findings of fact).

3.  Conclusion

Petitioner has not shown that he had higher bases in equipment sold in 1987-90 than the amounts conceded by respondent. Thus, we sustain respondent's determination regarding the amounts of gain from petitioner's sale of equipment in 1987-90, except as reduced by respondent's concession regarding the three pieces of equipment.

B.  Whether Petitioner Is Liable for Additions to Tax and the Accuracy-Related Penalty

1.  Negligence

a.  Background

For tax years 1987 and 1988, taxpayers are liable for an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Sec. 6653(a). For tax years 1989 and later, taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment attributable to negligence or disregard of rules or regulations or to any

substantial understatement of income tax.  Sec. 6662(a) and (b)(1) and (2).

### b.   Burden of Production

In court proceedings arising in connection with examinations beginning after July 22, 1998, section 7491(c) places on the Commissioner the burden of producing evidence showing that it is appropriate to impose the addition to tax under section 6653(a) for 1987-88 and the accuracy-related penalty for negligence under section 6662(a) for 1989-90 and 1992-97.  As stated above at paragraph A-1, the record does not show when the examination began.  If section 7491(c) applies, respondent has met the burden of production for negligence by showing that petitioner erroneously carried forward net operating losses (NOLs) from years for which we decided in Allnutt I that he had substantial income.

Petitioner contends that he prevails on this issue because respondent offered no contrary evidence.  We disagree. Petitioner bears the burden of proof.  See Rule 142(a).

### c.   Whether Petitioner Knew or Should Have Known Res Judicata Barred Him From Carrying Forward NOLs From 1981-86 to the Years in Issue

Respondent's sole ground for contending that petitioner is negligent under sections 6653(a) and 6662(a) is that he knew or should have known that he could not carry forward NOLs from 1981-86 to 1987-90 and 1992-97.  Thus, for respondent to prevail on

negligence, we must conclude that petitioner knew or should have known that he had no losses in 1981-86 and that res judicata barred him from carrying forward NOLs from 1981-86 to the years in issue.

In Allnutt I, the Court held that petitioner had substantial amounts of taxable income for each of the years 1981-86. Petitioner contends that he did not know or have reason to know that Allnutt I barred him from carrying forward NOLs from 1981-86 to the years in issue. We disagree.

Because of the District Court opinion in Allnut v. Friedman, Bankruptcy No. 92-5-7401-JS (D. Md., Jan. 20, 1995), petitioner knew or should have known before he filed his tax returns for the years in issue that he was barred by Allnutt I and res judicata from relitigating his tax liability for tax years 1981-86.

###### d. Whether Petitioner Had Substantial Authority for His Position

A taxpayer has substantial authority for his or her position if the weight of authority in support of the taxpayer's position is substantial in relation to the weight of authority supporting contrary positions. Roco v. Commissioner, 121 T.C. 160, 167 (2003); Antonides v. Commissioner, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990).

Petitioner contends that Barenholtz v. United States, 784 F.2d 375, 380-381 (Fed. Cir. 1986); Springfield St. Ry. Co. v. United States, 160 Ct. Cl. 111, 312 F.2d 754, 757-759 (1963);

Robarts v. Commissioner, 103 T.C. 72 (1994), affd. without published opinion 56 F.3d 1390 (11th Cir. 1995); Hamilton Indus., Inc. v. Commissioner, 97 T.C. 120, 127-128 (1991); and Budd Co. v. Commissioner, 33 T.C. 813 (1960), provide substantial authority for his position that he can claim losses for years for which we held in Allnutt I that he had substantial income. We disagree. The courts in the cases petitioner cites held that it was appropriate to consider facts from years closed by the statute of limitations in calculating tax liabilities for the years before the court. However, those cases are inapplicable here because they did not involve years that were litigated and barred by res judicata. Petitioner's contention that he can claim he had losses in years for which we decided in Allnutt I that he had substantial income does not logically follow from those cases.

e.    Whether Petitioner Relied on His C.P.A.

A taxpayer may be relieved of liability for negligence if the taxpayer shows that he or she reasonably relied on the advice of a qualified tax professional. Sec. 6664(c). Petitioner contends that he was not negligent because he reasonably relied on his C.P.A. We disagree. To establish reasonable reliance on the advice of a competent adviser, a taxpayer must show that he or she provided the return preparer with complete and accurate information. DeCleene v. Commissioner, 115 T.C. 457, 477 (2000);

Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).  Petitioner testified at trial on July 15, 2003, that he did not remember whether he discussed Allnutt I with his C.P.A. or showed him that opinion.[6] He did not call his C.P.A. as a witness.  Petitioner has not shown that he gave complete and accurate information to his C.P.A., that his C.P.A. advised him that he could carry forward NOLs from 1981-86 to the years in issue, or that he reasonably relied on the advice of his C.P.A.

_____

[6] After trial, petitioner filed an affidavit which includes the following:

> 6.  That I am filing this Affidavit to verify that the Certified Public Accountant (CPA) firm employed by me to prepare my tax returns for tax years 1987 through 1995 and my informational tax returns for 1981 through 1986 was aware of my previous tax court case.

> 7.  That I told said CPA firm about my earlier tax court case (referred to in the instant case as "Allnutt 1 [sic]") and ask them to use the income determined in Allnutt I by the tax court for the 1981 through 1986 tax years because it had already been determined to be correct.

> 8.  That the income listed on my 1981 and 1986 tax years is the same income determined by Allnutt I by the tax court as taken from the tax court records by said CPA.

We do not consider petitioner's affidavit because it is not admitted into evidence.  See sec. 7453; Rule 143(b); Walford v. Commissioner, T.C. Memo. 2003-296 at n.10.

f.   Whether Section 6662 Applies Only to Stamp Tax

Petitioner contends that section 6662 applies only to the failure to pay a stamp tax.  We disagree.  The accuracy-related penalty for negligence is not limited to failure to pay stamp tax.

g.   Conclusion as to Negligence

We conclude that petitioner did not have reasonable cause for carrying forward NOLs from 1981-86 to the years in issue and is liable for additions to tax for negligence for 1987-88 under section 6653(a) and the accuracy-related penalty for negligence for 1989-90 and 1992-97 under section 6662(a).  In light of our conclusion, we need not decide whether petitioner substantially understated his tax liability for 1989-90 and 1992-97 for purposes of section 6662(b)(2).

2.   Failure To Timely File

A taxpayer is liable for an addition to tax of up to 25 percent for failure to timely file a Federal income tax return unless the failure was due to reasonable cause and not willful neglect.  Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).

If section 7491(c) applies, respondent has met the burden of production because, as stated at paragraph 3 of the findings of fact, petitioner filed his returns late for 1987-90 and 1992. Thus, petitioner is liable for the addition to tax for failure to

timely file unless he proves that his failure to timely file was due to reasonable cause and not willful neglect. See <u>United States v. Boyle</u>, <u>supra</u>.

Petitioner contends that he is not liable for the addition to tax under section 6651(a)(1) for 1987-90 and 1992 because he had reasonable cause for believing that NOLs carried forward from 1981-86 to the years in issue eliminated his obligation to file returns for 1987-90 and 1992. We disagree. After carrying forward NOLs from 1981-86 to the years in issue, petitioner reported tax due of $65,838 for 1987, $53,434 for 1988, $25,139 for 1989, $29,602 for 1990, and $37,571 for 1992. Thus, petitioner's contention that he was not required to file returns for 1987-90 and 1992 is inconsistent with those returns.

Petitioner contends that he was not required to file income tax returns because the addition to tax under section 6651(a) applies only to taxes related to alcohol, tobacco, and certain firearms, but not to income tax. We disagree. The addition to tax under section 6651(a) applies to late filing of income tax returns. Sec. 6651(a).

Petitioner contends that he was not required to file income tax returns because (a) he testified that he was not engaged in a taxable activity, and (b) respondent did not cross-examine him on this point or present any evidence to rebut his testimony. We disagree. Petitioner admitted in his return filed for each year

in issue that he was engaged in a taxable activity.  See <u>Waring</u> <u>v. Commissioner</u>, 412 F.2d 800, 801 (3d Cir. 1969) (statements in a tax return signed by the taxpayer are admissions unless overcome by cogent evidence that they are wrong), affg. per curiam T.C. Memo. 1968-126; <u>Estate of Hall v. Commissioner</u>, 92 T.C. 312, 337-338 (1989); <u>Lare v. Commissioner</u>, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975).

Petitioner contends that he had reasonable cause to file late because the case involves complex issues of law.  We disagree for reasons stated in paragraph B-1, above.  Petitioner has not shown that he had reasonable cause for filing his 1987-90 and 1992 returns late.  We conclude that petitioner is liable for the addition to tax for failure to timely file his 1987-90 and 1992 returns.

C.  <u>Whether Petitioner Complied With Requirements for Issuing Subpoenas</u>

Petitioner prepared subpoenas dated October 12, 2001, June 19, 2003, and December 17, 2003, for IRS employees to testify about petitioner's delivery of his 1987-90 and 1992 returns to respondent and respondent's determination in the notice of deficiency.  None of the subpoenas included either a return of service containing the date and time of service or a sworn statement signed and dated by the person making service verifying that he or she had delivered the subpoena to the summoned witness

and tendered fees and mileage as required by Rule 147(c) and Rule 148.  Petitioner left some of the subpoenas at respondent's disclosure office in Baltimore.  To comply with Rule 147(c), a subpoena must be personally served on the witness by a person other than a party.  Petitioner testified that it would be difficult to locate respondent's employees to accomplish personal service.  At trial on October 22, 2001, and January 5, 2004, petitioner said he did not believe fees needed to be paid to Government employees.  Petitioner admitted that he did not tender any fees for the January 2004 subpoenas.  We conclude that petitioner did not comply with the personal service and fees and mileage requirements for issuing subpoenas.[7]  See Rules 147(c), 148(b).

D.   <u>Whether the Court's Denial of Petitioner's Motions To Recuse the Trial Judge and for a Hearing Was Proper</u>

Petitioner has made several motions to recuse the trial Judge.  We reaffirm our denial of those motions.

After the record closed, petitioner filed two motions for a hearing on petitioner's motion to sanction respondent under Rule 104(c) in which petitioner alleged that respondent's counsel fraudulently failed to provide to petitioner a copy of Forms 895 before December 28, 2001.  We denied petitioner's motions.  We

_____

[7]  In light of this conclusion, we need not decide whether the testimony of the subpoenaed witnesses would have been relevant.

previously rejected petitioner's contentions in Allnutt II (at paragraph C of the opinion).

In Allnutt II, petitioner alleged that respondent did not timely provide to him Forms 895 for tax years 1987-98.[8]  In Allnutt II, we said that petitioner had not shown that respondent withheld the Forms 895 in bad faith, that respondent violated any order, or that respondent's counsel's conduct was fraudulent.  In the current motion, petitioner has offered no new evidence and he has made no new arguments relevant to this issue.  We conclude that we properly denied petitioner's motions for a hearing.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.

---

[8]  Petitioner erroneously believes that the Forms 895 show that he filed his returns for the years in issue in February 1997, and, thus, that the notice of deficiency was untimely.